## In re MEDEX REGIONAL LABORATORIES, LLC, Debtor.

No. 03–31932.

United States Bankruptcy Court, E.D. Tennessee.

Aug. 25, 2004.

Long, Ragsdale & Waters, P.C., Garrett P. Swartwood, Knoxville, TN, for Gary L. Adelson, Peter F. Gale, Marcus Clark Grimes, and Paul J. Sides.

McKinnon, Fowler, Fox & Taylor, Arthur M. Fowler, Johnson City, TN, for Stephen Newman, Edward G. Bush, and Richard Ray.

Michael A. Faulk, Church Hill, TN, for G. Robert Ainslie.

Trauger, Ney & Tuke, Robert D. Tuke, Kathryn A. Stephenson, Nashville, TN, for Eddie Allen George, Fielding Rolston, Joe Macione, Ed Ollie, Janet Brown, Pat Hickie, and T. Arthur Scott.

Gentry, Tipton, Kizer & McLemore, P.C., Maurice K. Guinn, Tyler C. Huskey, Knoxville, TN, for the Official Unsecured Creditors Committee.

Hodges, Doughty & Carson, PLLC, Dean B. Farmer, Keith L. Edmiston, Knoxville, TN, for Debtor.

Jenkins & Jenkins Attys., PLLC, Michael H. Fitzpatrick, Knoxville, TN, for Chapter 11 Trustee.

Richard F. Clippard, United States Trustee, Patricia C. Foster, Knoxville, TN, for United States Trustee.

### MEMORANDUM ON MOTION FOR DETERMINATION THAT CERTAIN INSURANCE PROCEEDS ARE NOT PROPERTY OF THE ESTATE, OR IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY

RICHARD STAIR, JR., Bankruptcy Judge.

The following contested matters are before the court: (1) the Motion for Determination that Certain Insurance Proceeds are not Property of the Estate, or in the Alternative, for Relief from the Automatic Stay filed by Gary L. Adelson, Peter F. Gale, Marcus Clark Grimes, and Paul J. Sides on May 6, 2004; (2) the Motion for Determination that Certain Insurance Proceeds are not Property of the Estate, or, in the Alternative, for Relief from Automatic Stay filed by Edward G. Bush, Richard Ray, and Stephen Newman on May 17, 2004; (3) the Motion for Determination that Certain Insurance Proceeds are not Property of the Estate, or, in the Alternative, for Relief from Automatic Stay filed by G. Robert Ainslie on May 20, 2004; and (4) the Motion for Determination that Certain Insurance Proceeds are not Property of the Estate, or, in the Alternative, for Relief from Automatic Stay filed by Eddie Allen George, Fielding Rolston, Joe Macione, Ed Ollie, Janet Brown, Pat Hickie, and T. Arthur Scott on June 1, 2004 (collectively Motions). Through these Motions, the Movants asked the court to find that insurance proceeds originating from a directors and officers liability insurance policy obtained by the Debtor are not property of the bankruptcy estate, such that the Movants may use the proceeds for payment of their defense costs in Adversary Proceeding No. 03–3201 (Adversary Proceeding), filed against them by the Official Unsecured Creditors Committee (Committee). In the alternative, if the court finds that the proceeds are property of the Debtor's estate, the Movants seek relief from the automatic stay to allow the insurance carrier to make payments to them for the costs of their defense.

All facts and documents essential to the resolution of these Motions are before the court through the Stipulations and exhibits filed by the parties on July 22, 2004, together with the briefs filed by the Movants and the Committee on August 2, 2004, and August 9, 2004.

This is a noncore proceeding that is otherwise related to the Debtor's bankruptcy case. All parties have consented to the entry of final orders and judgments by the bankruptcy judge. *See* 28 U.S.C.A. § 157(c)(2) (West 1993).

### I

The Debtor was organized as a limited liability company under the laws of the state of Tennessee by virtue of an Operating Agreement dated October 1, 1999, and each of the Movants herein was a governor and/or manager of the Debtor. In 2002, the Debtor obtained the ExecPro Directors', Officers', Insured Entity and Employment Practices Liability Insurance Policy, number NMP5235714 (Policy), from Great American Insurance Company (Great American). The Policy provided coverage for the "Policy Period" of July 1, 2002, until July 1, 2003 (Policy Period), along with a "Discovery Period" extending coverage for claims made within the twelve months following the Policy Period for wrongful acts committed prior to the end

of the Policy Period under certain terms, conditions, and limitations set forth in the Policy. The limit of liability under the Policy, including costs of defense, is $5,000,000.00 (Policy Proceeds).

Each of the Movants is an "Insured Person," the Debtor is an "Insured Entity," and the Movants and the Debtor are "Insureds" as defined in the Policy. Specifically, the Policy provides the following coverages to the Movants and the Debtor:

A. The Insurer shall pay on behalf of the Insured Persons all Loss which the Insured Persons shall be legally obligated to pay as a result of a Claim (including an Employment Practices Claim or a Securities Claim) first made against the Insured Persons during the Policy Period or the Discovery Period for a Wrongful Act, except for any Loss which the Company actually pays as indemnification.

B. The Insurer shall pay on behalf of the Company all Loss which the Insured Persons shall be legally obligated to pay as a result of a Claim (including an Employment Practices Claim or a Securities Claim) first made against the Insured Persons during the Policy Period or the Discovery Period for a Wrongful Act, but only to the extent the Company is required or permitted by law to indemnify the Insured Persons.

C. The Insurer shall pay on behalf of the Insured Entity all Loss which the Insured Entity shall be legally obligated to pay as a result of a Securities Claim first made against the Insured Entity during the Policy Period or the Discovery Period for a Wrongful Act.

Stip. Ex. C.

The Debtor filed the Voluntary Petition commencing its Chapter 11 bankruptcy case on April 8, 2003. The Committee was subsequently appointed, and on December 3, 2003, it filed a Complaint initiating an Adversary Proceeding, No. 03–3201, against the Movants, in which it requested a judgment in the amount of $15,000,000.00 for breach of fiduciary duty, breach of the duty of care and loyalty owed by the Movants to the Debtor, abdication of responsibilities, breach of contract, negligent supervision, negligent promotion, negligent hiring, conversion, and negligence, stemming from their positions as governors and managers of the Debtor and conduct engaged in prior to the Debtor's Chapter 11 bankruptcy filing. The Committee filed its Amended Complaint on May 6, 2004, and all of the Movants have filed Answers to both the Complaint and Amended Complaint.[1] In their respective Answers, each of the Movants has asserted indemnification by the Debtor as an affirmative defense. See Stip.Ex. B. Additionally, five of the Movants, Gale, Anderson, Sides, Grimes, and Adelson, filed proofs of claim in the Debtor's bankruptcy case for an undetermined amount based upon a possible indemnification by the Debtor. See Stip.Ex. E.

The Adversary Proceeding constitutes a "Claim" as defined in the Policy. On June 25, 2003, the Debtor's attorneys notified Great American that it was making a claim or demand for costs under the Policy concerning the Adversary Proceeding. The letter also advised Great American that Marjorie R. Moore, a former employee of the Debtor, had, by letter, informed the Debtor that she intended to pursue a claim against the Debtor's governors; however, Ms. Moore has not initiated any action

1. The court, on May 20, 2004, abstained from hearing the Adversary Proceeding. There is presently pending before the district court the Committee's Motion to Withdraw the Reference filed on June 4, 2004. As the district court has not yet acted on the Committee's motion, the court will continue to refer to this action as the Adversary Proceeding.

against the Debtor or any of the Movants, nor has she filed a proof of claim in the Debtor's bankruptcy case. The parties have stipulated that other than the Adversary Proceeding, any affirmative defenses thereto, and proofs of claim filed by five of the Movants, there have been no additional potential claims asserted against the Debtor or or any of the Movants that would be covered under the terms of the Policy.

Pursuant to the demand made by the Debtor, Great American has agreed to pay the Movants' reasonable and necessary Costs of Defense in accordance with the terms, conditions, and limitations described in the Policy and under certain reservations of rights. Great American has asserted that certain exclusions may apply under the Policy, and Great American has conditioned payment of the Costs of Defense on the court finding that the Policy Proceeds are not property of the Debtor's estate or granting relief from the automatic stay as to the Policy Proceeds. The Movants are represented by different attorneys, and to date, the Costs of Defense have amounted to approximately $60,000.00. These Costs of Defense will continue to accrue during the pendency and litigation of the Adversary Proceeding, as the Movants expect to retain experts for consultation and testimonial purposes. Nevertheless, the Movants do not anticipate that their aggregate Costs of Defense will exceed $500,000.00.

## II

The commencement of a bankruptcy case "creates an estate," consisting of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the estate," 11 U.S.C.A. § 541(a) (West 1993), which is protected by the institution of an automatic stay, preventing parties from taking any actions against the debtor or property of the estate. 11 U.S.C.A. § 362(a) (West 1993 & Supp.2004). Congress intended for the scope of § 541 to be broad, see *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983), and "an overwhelming majority of courts have concluded that liability insurance policies fall within § 541(a)(1)'s definition of estate property." *Homsy v. Floyd (In re Vitek, Inc.)*, 51 F.3d 530, 533 (5th Cir.1995). Nevertheless, the estate's legal or equitable interests cannot rise above that of the Debtor's pre-bankruptcy. *La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.)*, 832 F.2d 1391, 1399 (5th Cir.1987). Although the courts readily agree that directors' and officers' insurance policies themselves are property of a debtor's estate, there is more discord regarding the question of whether proceeds of such policies constitute estate property. *See In re Allied Digital Techs. Corp.*, 306 B.R. 505, 509 (Bankr.D.Del. 2004); *In re CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr.D.Mass.2002); *Youngstown Osteopathic Hosp. Ass'n v. Ventresco (In re Youngstown Osteopathic Hosp. Ass'n)*, 271 B.R. 544, 547–48 (Bankr.N.D.Ohio 2002).

In making its determination, the court must analyze the facts of each particular case, focusing primarily upon the terms of the actual policy itself, and "[t]he outcome usually hinges on who is the named insured under the liability insurance policy." *Allied Digital Techs. Corp.*, 306 B.R. at 509–10; *see also Morris v. Nat'l Union Fire Ins. Co. (In re Eastwind Group, Inc.)*, 303 B.R. 743, 747 (Bankr. E.D.Pa.2004); *CyberMedica, Inc.*, 280 B.R. at 16. If, under the terms of the directors' and officers' policy, the debtor has a direct interest in receiving the proceeds, they are property of the estate; conversely, if only the directors and officers have a direct interest in the proceeds, they are not prop-

erty of the estate. *See Allied Digital Techs. Corp.,* 306 B.R. at 510–11; *Youngstown Osteopathic Hosp. Ass'n,* 271 B.R. at 548. The conflict arises in those cases where the debtor has indemnification coverage under the directors' and officers' policy. *Allied Digital Techs. Corp.,* 306 B.R. at 511. That conflict generally centers around whether the debtor also enjoys "entity coverage" that provides it with a specific, discernable interest in addition to the mere possibility of indemnification. *Compare Eastwind Group, Inc.,* 303 B.R. at 747–48 (finding that proceeds were property of the estate because a third party alleged securities violations against both the debtor and its officers and directors, for which both groups were covered) *with Ochs v. Lipson (In re First Cent. Fin. Corp.),* 238 B.R. 9, 18 (Bankr. E.D.N.Y.1999) (holding that "[i]f entity coverage is hypothetical and fails to provide some palpable benefit to the estate, it cannot be used by a trustee to leverage himself into a position of first entitlement to policy proceeds."). Additionally, it is important for the court to remember the purpose behind a directors' and officers' policy:

D & O policies are obtained for the protection of individual directors and officers. Indemnification coverage does not change this fundamental purpose. There is an important distinction between the individual liability and the reimbursement portions of a D & O policy. The liability portion of the policy provides coverage directly to officers and directors, insuring the individuals from personal loss for claims that are not indemnified by the corporation. Unlike an ordinary liability insurance policy, in which a corporate purchaser obtains primary protection from lawsuits, a corporation does not enjoy direct coverage under a D & O policy. It is insured indirectly for its indemnification obligations. In essence and at its core, a D & O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection.

*Youngstown Osteopathic Hosp. Ass'n,* 271 B.R. at 550 (quoting *First Cent. Fin. Corp.,* 238 B.R. at 16).

▮ Based upon an examination of the cases addressing this point, the court agrees with and adopts the following finding by the court in *Allied Digital Technologies Corporation*:

The Court concludes that when a debtor's liability insurance policy provides direct coverage to the debtor the proceeds are property of the estate, because the proceeds are payable to the debtor. Further, when the liability insurance policy only provides direct coverage to the directors and officers the proceeds are not property of the estate. However, when there is coverage for the directors and officers and the debtor, the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution. Lastly, when the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate.

*Allied Digital Techs. Corp.,* 306 B.R. at 512.

▮ In this case, there is no dispute that the Policy expressly provides direct coverage to the Movants for their costs in defending all claims, including the Adversary Proceeding, resulting from their positions with the Debtor, except for any costs "which the [Debtor] actually pays as indemnification." STIP.EX. C. At this time, the Debtor has not made any payments to

the Movants for indemnification, and it has not agreed or committed itself to paying any indemnification except as required by the Operating Agreement, which incorporates therein certain requirements of Tennessee Code Annotated section 48–243–101 (2002). Section 12.01 of the Debtor's Operating Agreement states, in material part:

> The Company shall indemnify, and upon request shall advance expenses prior to final disposition of a Proceeding ... to, any person ... who was or is a Party ... to, or is threatened to be made a Party to, any Proceeding, whether or not by or in the right of the Company, by reason of the fact that such person is or was a Governor, Manager, employee or agent of the Company ...: (i) to the full extent permitted by Section [48–243–101 of the Tennessee Code Annotated], and (ii) despite the fact that such person has not met the standard of conduct set forth in Section [48–243–101](b)(1) ... or would be disqualified for indemnification under Section [48–243–101](b)(4) ..., if a determination in [sic] made by a person or persons enumerated in Section [48–243–101](f)(2) ... that (A) the governor, manager, employee or agent is fairly and reasonably entitled to indemnification in view of all of the relevant circumstances, and (B) the acts or omissions of the Governor, Manager, employee or agent did not constitute gross negligence or willful misconduct.... The Company may, to the full extent permitted by law, purchase and maintain insurance on behalf of any such person against any Liability which may be asserted against him or her.

STIP.Ex. A. The parties agree that pursuant to the Operating Agreement, the Movants are not entitled to indemnification for acts and omissions that constitute gross negligence or willful misconduct.

With respect to the Debtor, the Policy provides indemnification coverage "only to the extent the [Debtor] is required or permitted by law to indemnify the [Movants]." STIP. Ex. C. As previously stated, under the terms of the Operating Agreement, the Movants are entitled to indemnification for all Costs of Defense by the Debtor unless they are found liable for gross negligence or willful misconduct. In the Adversary Proceeding, the Committee has alleged that the Movants were grossly negligent in their duties as governors and/or directors of the Debtor. Accordingly, even though the Movants have all asserted affirmative defenses in their respective Answers concerning indemnification, and five of the Movants have filed proofs of claim in the bankruptcy case to that effect, the fact remains that the Debtor may not be required to pay indemnification to any of the Movants if the Committee successfully proves gross negligence on the part of the Movants.

Finally, the Policy also provides direct coverage to the Debtor for any securities claim made during the Policy Period or the Discovery Period. However, these periods have expired, and the parties stipulate that Great American has not received any notices, claims, or demands against the Debtor regarding any securities claims. Accordingly, the Debtor no longer enjoys any direct "entity coverage" under the Policy. As in the *Allied Digital Technologies Corporation* case, by virtue of the Adversary Proceeding filed by the Committee, the Movants face "real" defense costs, while the Debtor faces "hypothetical" indemnification costs. *See Allied Digital Techs. Corp.*, 306 B.R. at 512–13.

Because the Debtor has not provided any indemnification to the Movants, and because any such indemnification is hypothetical and/or speculative, the court finds that the Policy Proceeds are not property

723

of the Debtor's bankruptcy estate, and as such, they are not covered by the automatic stay provisions of 11 U.S.C.A. § 362(a). Great American is therefore not precluded by the automatic stay from disbursing the Costs of Defense directly to the Movants in accordance with the terms of the Policy. Nevertheless, "any payment [to the Movants] under the liability coverage reduces the amount of the potential indemnification claim[s] to the same extent that policy amounts available for indemnification are thus reduced." *La. World Exposition, Inc.*, 832 F.2d at 1400.

An order consistent with this Memorandum will be entered.

### ORDER

For the reasons set forth in the Memorandum on Motion for Determination That Certain Insurance Proceeds are Not Property of the Estate, or in the Alternative, for Relief From the Automatic Stay filed this date, the court, having determined that the proceeds of the ExecPro Directors', Officers', Insured Entity and Employment Practices Liability Insurance Policy, number NMP5235714, for the policy period July 1, 2002, to July 1, 2003, are not property of the estate, directs that to the extent the Motion for Determination That Certain Insurance Proceeds are Not Property of the Estate, or in the Alternative, for Relief From the Automatic Stay filed by Gary L. Adelson, Peter F. Gale, Marcus Clark Grimes, and Paul J. Sides on May 6, 2004, the Motion for Determination That Certain Insurance Proceeds are Not Property of the Estate, or, in the Alternative, for Relief From Automatic Stay filed by Edward G. Bush, Richard Ray, and Stephen Newman on May 17, 2004, the Motion for Determination That Certain Insurance Proceeds are Not Property of the Estate, or, in the Alternative, for Relief From Automatic Stay filed by G. Robert

Ainslie on May 20, 2004, and the Motion for Determination That Certain Insurance Proceeds are Not Property of the Estate, or, in the Alternative, for Relief From Automatic Stay filed by Eddie Allen George, Fielding Rolston, Joe Macione, Ed Ollie, Janet Brown, Pat Hickie, and T. Arthur Scott filed on June 1, 2004, request modification of the automatic stay to allow Great American Insurance Company to make payment directly to them for the costs of their defense of Adversary Proceeding No. 03–3201, the Motions are DENIED because the proceeds of the aforesaid policy are not subject to the automatic stay of 11 U.S.C.A. § 362(a) (West 1993).

SO ORDERED.