**J.L. HOLLOWAY and Ronald W. Schnoor, Plaintiffs,**

v.

**John DANE III and Rick S. Rees, Defendants.**

**No. CIV.A.3:04 CV 13LN.**

United States District Court, S.D. Mississippi, Jackson Division.

Sept. 28, 2004.

---

Steven L. Hoard, J. Elizabeth Lyons, Mullin, Hoard & Brown, Armarillo, TX, Derek A. Henderson, Jackson, MS, for Plaintiffs.

Ross F. Bass, Jr., James W. Craig, Benjamin L. Robinson, Fred L. Banks, Jr., Phelps Dunbar, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiffs J.L. Holloway and Ronald W. Schnoor to remand or, in the alternative, for mandatory or permissive abstention and equitable remand. Defendants John Dane, III and Rick S. Rees have responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that plaintiffs' motion should be granted.

In November 1999, Friede Goldman International (FGI), a company engaged in the business of converting, retrofitting and repairing offshore drilling rigs, with Halter Marine Group (HMG), which was engaged in the business of constructing, repairing and converting primarily ocean-going vessels. A year-and-a-half later, in April 2001, the company formed from the merger, Friede Goldman Halter (FGH) declared bankruptcy.

Prior to the merger, Holloway had been the president, chief executive officer and chairman of the board of directors of FGI, as well as its principal shareholder, and Schnoor, a substantial shareholder of FGI, had been the company's executive vice-president. At the time of the merger, defendant Dane was HMG's president, chief executive officer and chairman of the board, and Rees was executive vice-president, chief financial officer and a director of HMG. Following the merger, plaintiffs and defendants were officers and directors of FGH.

In FGH's bankruptcy case, the Consolidated FGH Liquidating Trust (Trust) was formed pursuant to the debtor's confirmed plan of reorganization for the purpose of recovering, administering and distributing estate assets for the benefit of unsecured creditors. Toward that end, in April 2003, the Trust commenced an adversary proceeding in the bankruptcy case against the various officers and directors of FGH, including both the plaintiffs and defendants herein, for activities occurring both before and after the merger, and alleged, *inter alia*, that the officers and directors of HMG, including defendants, had misrepresented the financial condition of HMG prior to the merger, and that the officers and directors of FGI, including plaintiffs, had

failed to exercise due diligence with respect to the merger.[1]

On October 10, 2003, nearly six months after the adversary proceeding was filed, Holloway and Schnoor brought the present action against Dane and Rees in the Circuit Court of Hinds County, Mississippi, asserting claims for negligent and/or fraudulent misrepresentation and concealment and for violations of the Mississippi Blue Sky Law based on allegations that Dane and Rees, in a concerted effort to make the FGI/HMG merger appear more attractive to Holloway and Schnoor, made numerous misrepresentations and failed to disclose other material facts and information to them bearing on HMG's financial condition. Holloway and Schnoor allege that in reliance upon defendants' misrepresentations and omissions, they supported and voted in favor of the merger and exchanged their stock in FGI for stock in FGH. They charge that the new FGH stock was essentially worthless at the time of, and after, the merger due to HMG's undisclosed financial condition, as a result of which they lost their entire investment in FGI stock.

Defendants removed the case to this court pursuant to 28 U.S.C. § 1446 and 28 U.S.C. § 1452, contending that the court has diversity jurisdiction and bankruptcy jurisdiction. Plaintiffs insist that federal jurisdiction is not sustainable on either of the bases urged by defendants and that consequently, the case must be remanded.

In support of their assertion of diversity jurisdiction, defendants acknowledge that John Dane, III is a citizen of Mississippi, as are the plaintiffs. They contend, though, that because the statute of limitations has run on plaintiffs' claims against Dane, it follows that he has been fraudulently joined. They note that complete diversity does exist as between the remaining parties, Holloway and Schnoor on the one hand, and Rees on the other, and conclude that since the amount in controversy clearly exceeds the $75,000 minimum required for an exercise of diversity jurisdiction, *see* 28 U.S.C. § 1332, plaintiffs' motion to remand must be denied.

■ In the court's opinion, plaintiffs have made a plausible argument that the statute of limitations was tolled until such time as they discovered the alleged fraud by defendants. *See* Miss.Code Ann. § 15–1–67 ("If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered."); *see also* Miss.Code Ann. § 15–1–49(2) ("In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury."). And being mindful of its charge to resolve

1. In that cause, styled *Oakridge Consulting, Inc., et al. v. J.L. Holloway, et al.,* Adversary No. 03–05284 (Bankr.S.D.Miss.), the complaint alleges claims against the HMG directors for violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b–5, violations of Section 14(a) of the Securities Exchange Act of 1934 and SEC rule 14a–9, negligent misrepresentation, common law fraud and civil conspiracy. It alleg-

es a claim against the FGI directors for breach of fiduciary duty. And it charges the directors of FGH with breach of fiduciary duty which caused FGH's deepening insolvency.

In addition to suing the officers and directors, the Trust sued a number of professional entities that had engaged in providing accounting, financial and legal advice to FGH for alleged professional negligence.

doubts as to the propriety of removal in favor of remand, the court is unable to conclude that Dane has been fraudulently joined.[2]

▮ Defendants next maintain that removal was proper under 28 U.S.C. § 1452, reasoning that this case is "related to" the FGH bankruptcy proceeding because (1) the claims alleged in this cause can *only* be brought by FGH or its bankruptcy estate and indeed have been raised and are being pursued on behalf of the bankruptcy estate in the adversary proceeding, where the issue of legal responsibility for FGH's financial problems will be fully addressed; and/or because (2) defendants "may have indemnification claims against the bankruptcy estate as well as contribution claims against the other defendants in the adversary proceeding."[3]

▮ In support of the former contention, defendants point out that the rule in Mississippi, as elsewhere, is that "[a]n action to redress injuries to a corporation, whether arising in contract or tort, cannot be maintained by a stockholder in his own name, but must be brought by the corporation because the action belongs to the corporation and not the individual stockholders whose rights are merely derivative."

*Bruno v. Southeastern Servs.*, 385 So.2d 620, 622 (Miss.1980). *See also Crocker v. Federal Deposit Ins. Corp.*, 826 F.2d 347, 349 (5th Cir.1987); *Pennsylvania House Div. of General Mills, Inc. v. McCuen*, 621 F.Supp. 1155, 1155–56 (S.D.Miss.1985). This rule applies, in fact, "even though the complaining stockholder owns all or substantially all of the stock of the corporation." *Bruno*, 385 So.2d at 622. Defendants acknowledge that an exception to the rule exists when the complaining stockholder has suffered an individual injury that is distinct from the alleged injury to the corporation, *see Vickers v. First Miss. Nat'l Bank*, 458 So.2d 1055, 1063 (Miss. 1984), but point out that injuries in the form of diminution in the value of a shareholder's stock do not give rise to a claim by the individual stockholder but rather give rise to claims by the corporation or by shareholders in a derivative action. *Crocker*, 826 F.2d at 351.

Invoking these legal principles, defendants maintain that any claims which may exist for the actions alleged in plaintiffs' complaint in this cause are purely derivative claims of FGH and as such,' do not belong to individual shareholders, such as Holloway and Schnoor, but rather to FGH itself. Defendants thus conclude that Hol-

---

2. The court notes that in the specific circumstances of this case, involving identical factual allegations of concerted misrepresentation by both defendants, it would seem that the statute of limitations defense, if meritorious, would be equally dispositive of plaintiffs' claims against Dane and Rees and that a finding of fraudulent joinder would not be sustainable on the basis of this defense. *See Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 2004 WL 2047314, *4 (5th Cir.2004).

3. Under 28 U.S.C. § 1452(a), "[a] party may remove any claim or cause of action in a civil action … if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Section 1334(b) provides that the district courts have jurisdiction over "all civil proceedings arising under

title 11, or arising in or related to cases under title 11." "Arising under title 11" describes a case that involves a cause of action created by title 11. *See In re Wood*, 825 F.2d 90, 96 (5th Cir.1987). "[A]rising in a cause under title 11" refers to cases "that are not based on any rights expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* And a claim is "related to" a bankruptcy case if " 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.' " *Feld v. Zale Corp.*, 62 F.3d 746, 752 (5th Cir.1995) (quoting *Pacor, Inc., v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)). Defendants here have contended only that this case "relates to" the FGH bankruptcy.

loway and Schnoor, who do not purport to have brought this as a derivative action but rather by them in their individual capacities, are foreclosed from pursuing these claims.

Setting aside for the moment defendants' arguments based on their potential indemnification rights and focusing solely on the argument at hand, the necessarily implication of defendants' argument on the point under consideration is that in order for this court to conclude that it has "related to" bankruptcy jurisdiction, it must first find that plaintiffs have not stated a cognizable claim or claims as a matter of state law. Yet if plaintiffs have asserted no cognizable claim for relief, their claims would not be transferred to the bankruptcy court for consolidation with the adversary proceeding, which defendants suggest would be the proper course; their claims would instead be dismissed. That is, defendants plainly contend that the claims in this cause are "related to" FGH's bankruptcy, or more to the point, to the adversary proceeding, only if the claims herein are for injuries to FGH so that the right of the plaintiffs to pursue the claims is mere-

ly derivative of the rights of FGH. However, defendants specifically observe that plaintiffs herein have purported to bring this action solely in their individual capacity, i.e., they do not bring it as a derivative action.[4] Therefore, if plaintiffs are foreclosed from pursuing their claims as individuals on the basis that the claims are derivative, it would follow that dismissal of their complaint was in order.[5] On the other hand, if the plaintiffs' claims were found to come within the exception acknowledged by defendants, or if plaintiffs were otherwise free to pursue their claims for relief in their individual capacity, then their claims would not "relate to" the bankruptcy case.[6]

Defendants argue that there is another reason why this court has "related to" bankruptcy jurisdiction, namely, that they could attempt to seek indemnification from the bankruptcy estate. In this vein, they note that the merger agreement between HMG and FGI provided for indemnification of HMG's directors and officers "to the fullest extent permitted under applicable law" for

---

4. The court would note, too, that in their complaint and in their submissions on the present motion, plaintiffs do not themselves suggest that this action was brought as a derivative action or that they have sought or would seek to pursue the claims as derivative claims.

5. *See, e.g., Aubin v. Susi,* 149 N.C.App. 320, 326, 560 S.E.2d 875, 880 (N.C.App.2002) (where plaintiff took the position that the claims she was pursuing were not derivative but individual claims, court's conclusion that the claims were, in fact, derivative should have resulted in dismissal for plaintiff's lack of standing to maintain a direct action seeking individual recovery).

In *Derouen v. Murray,* 604 So.2d 1086, 1090 (Miss.1992), the Mississippi Supreme Court concluded that an action which had not been specifically brought as a "derivative action"

nevertheless was properly treated as such. The court observed,

> Derouen has never called his action a "shareholder's derivative action," but looking to its nature, the proof he made and the relief he sought, that is exactly what it is. Derouen's suit is but a rose by another name, and we doubt there can be doubt of the point.

The court went on to observe that there had been "nothing remotely resembling an objection" from the defendant at trial as the plaintiff had explored his dealings on behalf of the corporation, and concluded that the plaintiff's "derivative claim [had] been tried by implied consent." *Id.* That is clearly a distinguishable situation from that presented here, for here, there is no question but that plaintiffs brought this solely as an individual action.

6. The court does not perceive defendants to contend otherwise.

all costs and expenses (including attorneys' fees), judgments, ... losses, claims, damages, liabilities and settlement amounts paid in connection with any claim, action, suit [or] proceeding .... arising out of or pertaining to any action or omission in their capacity as an officer or director, in each case occurring before the Effective Time (including the transactions contemplated by this Agreement).

In addition, both defendants had indemnification agreements with HMG which provided indemnification rights to them by HMG or its successors and assigns. Defendants argue that because HMG subsequently merged with FGI to form FGH, then they may eventually look to FGH to provide indemnification against the claims being brought by the plaintiffs herein. They contend that this case is "related to" the bankruptcy estate because FGH's estate includes a certain Directors and Officers insurance policy to which defendants may look for payment of their defense costs and for any liability which may be assessed against them in this case.

The insurance policy to which defendants refer was issued to HMG prior to the merger and became the property of FGH at the time of the merger. The policy is now property of FGH's bankruptcy estate. However, defendants do not deny that the policy at issue provides no direct coverage for the corporation and instead, covers only the former HMG officers and directors. The Fifth Circuit has clearly held that "when a debtor corporation owns a liability policy that exclusively covers its directors and officers, ... the proceeds of that D & O policy are not part of the debtor's bankruptcy estate." *Matter of Vitek, Inc.,* 51 F.3d 530, 535 (5th Cir.1995) (citing *In re Louisiana World Exposition,* 832 F.2d 1391, 1399 (5th Cir. 1987), in which the court held that "[t]he policy is part of the estate until the time that the proceeds become payable under the terms of the policy; then those proceeds belong to those entitled to them"). Accordingly, there is no merit to defendants' argument that their defense under the insurance policy could affect the amount of insurance coverage available to the debtor's estate by depleting assets of the estate.[7]

As for defendants' argument concerning the possibility they may assert a claim for indemnification against FGH based either on the merger agreement or on their indemnification agreement with HMG, plaintiffs point out that defendants filed no proof of claim and that the bar date for filing a claim has now passed. Thus, while there are cases in which the existence of a potential indemnity claim may furnish the requisite "relatedness to" a bankruptcy case to sustain jurisdiction under § 1334, that does not appear to be the case here.

The court would note, though, that even were defendants not foreclosed for this reason from pursuing a claim for indemnification against the estate, their right to indemnification is appears speculative, to say the least.[8] In the court's view, even if

---

7. There is likewise no merit to defendants' argument in their notice of removal that this case is related to FGH's bankruptcy case based on their potential claim for contribution against other defendants in the adversary proceeding. As plaintiffs correctly observe, any contribution claim defendants might have against other directors and officers of FGH or the pre-merger HMG would not affect the value of the FGH bankruptcy estate.

8. As plaintiffs observe, defendants would have the difficult burden to prove the availability of indemnification under the agreement(s) and applicable law, which requires proof, among other things, that defendants' acts were undertaken in good faith. *See* Miss.Code Ann.

the possibility that defendants might eventually attempt to pursue a speculative claim for indemnity would suffice to support a conclusion that this case is "related to" the FGH bankruptcy, it is nothing more than merely "related to" the bankruptcy.

■ Under 28 U.S.C. § 1334(c)(2), in "non-core" proceedings, i.e., "related to" proceedings, courts must abstain from hearing a state law claim for which there is no independent basis for federal jurisdiction other than § 1334(b) if a timely request for abstention has been made and "if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." *In re Gober*, 100 F.3d 1195, 1206 (5th Cir.1996). In this case, the court has concluded that defendants' assertion of diversity jurisdiction is not well grounded. Moreover, plaintiffs have timely moved the court to abstain in this cause. And, while defendants contend otherwise, it does appear to the court that this action could be timely adjudicated in state court. Accordingly, even were the court persuaded that this case is related to the FGH bankruptcy, if only marginally so, the court would conclude that the conditions for mandatory abstention apply so that the case should be remanded.[9]

Based on the foregoing, it is ordered that plaintiffs' motion to remand is granted.

---

§ 79–4–8.50, *et seq. Cf. In re Dow Corning*, 86 F.3d 482, 494 (6th Cir.1996) (finding "related to" jurisdiction based on possibility of contribution or indemnification liability where that possibility was "far from attenuated").

9. It should also be apparent from the foregoing that even if the court did have jurisdiction and even were it not required to abstain, it would choose to abstain and remand in view of the fact that the case involves solely state law issues, the fact that there would be no jurisdiction over the case were it not for the bankruptcy, and in general, because maintaining jurisdiction will not contribute in any way to the efficient administration of the bankruptcy estate.