## In re ARTER & HADDEN, L.L.P., Debtor.

### No. 03–23293.

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

Nov. 29, 2005.

**668**

Paul E. Harner, Columbus, OH, for Debtor.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

The matter before the Court is the Motion of Executive and Management Committee Members for an Order Permitting Payment of Attorney's Fees by the Debtor's Insurer ("Motion for Payment"). The Court acquires core matter jurisdiction over this proceeding under 28 U.S.C. § 157(b)(2)(J) and General Order No. 84 of this District. Upon an examination of the parties' respective briefs and supporting documentation, and after conducting a hearing on the matter, the following findings of fact and conclusions of law are hereby rendered:

*

Arter & Hadden, L.L.P. (the "Debtor") was a law firm with a national practice until it ceased operations on July 15, 2003. An involuntary Chapter 7 petition was filed against the Debtor on October 6, 2003. The Trustee alleges that several former partners and employees of the debtor engaged in the improper withdrawal of capital. Specifically, the Trustee asserts that the partners are liable for improper distributions of capital during the time that the firm was insolvent, and for revenues and legal fees that each received for legal work performed on matters that were pending while the Debtor was operational.

This matter concerns sixteen (16) individuals who were Executive and Management Committee members of the Debtor (the "Executive and Management Committee"). The Executive Risk Specialty Insurance Company ("Executive Risk") issued a Management Liability Policy to the Debtor, which was effective from January 31, 2003 to January 31, 2004 (the "Policy"). The Debtor is the Named Insured under the Policy.[1] The Policy specifically covers both the former Executive and Management Committee members and the Debtor itself, providing:

(1) The term "Insured," as defined in Section II Definitions (D) of the Policy is amended to read in its entirety as follows:

"(D) 'Insured' means:

---

1. Item 1 of Declarations of the Policy.

(a) each person who is, was or becomes a member of the Management Committee;

(b) each person who is, was or becomes an Executive Officer; or

(c) the Named Insured, or any Subsidiary of the Named Insured." [2]

A "claim" is defined in the Policy as "written notice received by any Insured that any person or entity intends to hold an Insured responsible for a Wrongful Act." [3] A "Wrongful Act" is defined as:

(1) any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by an Executive Officer in connection with the conduct of the Named Insured's or any Subsidiary's business; and

(2) any matter asserted against an individual Insured solely by reason of his or her status as a partner, manager, director, principal, or an officer or employee of the Named Insured or any Subsidiary. [4]

The Policy contains a $5 million aggregate limit of liability for all loss. [5] Payment of defense costs by Executive Risk is included in the limit of liability, and therefore reduces the available limits.

Pursuant to the Policy, the Executive and Management Committee members demanded that Executive Risk defend them against the Trustee's allegations. Executive Risk retained the law firm of McLaughlin & McCaffrey LLP to defend the Executive and Management Committee members collectively under the Policy, subject to a full reservation of all rights under the Policy and/or applicable law to deny coverage and/or to rescind the Policy. Executive Risk requested that the Executive and Management Committee members seek and obtain an order from the Court modifying the automatic stay, if applicable, and permitting Executive Risk to continue to pay for the defense costs for the Executive and Management Committee members.

Accordingly, the Executive and Management Committee moved this Court on July 9, 2005 for an order permitting payment of attorney's fees by Executive Risk. An agreed order was entered by the Trustee and the Executive and Management Committee Members providing for a modification of the automatic stay to permit Executive Risk to pay the defense costs of the Executive and Management Committee Members in an amount up to $250,000, for the purpose of representing them in settlement discussions with the Trustee. The order provided that the agreement would cease if a settlement was not reached with the Trustee.

The Trustee was able to reach settlement agreements with six (6) of the Executive and Management Committee members. On September 18, 2005, the Trustee filed a complaint for damages against several former partners of the Debtor, including the remaining ten (10) Executive and Management and Committee members. [6]

The Executive and Management Committee filed the pending Motion for Payment on September 30, 2005. The Motion for Payment acknowledged the Trustee's position that the proceeds of the Policy were property of the estate, and therefore

---

2.  ¶ 1 of Endorsement No. 1 to the Policy.

3.  ¶ II(B) of the Policy.

4.  ¶ 3 of Endorsement No. 1 to the Policy.

5.  Item 3 of Declarations of the Policy.

6.  Six (6) of the ten (10) Executive and Management and Committee members named in the Trustee's complaint allege that they did, in fact, reach a settlement with the Trustee, and have brought Motions to Enforce the purported settlement.

filed the Motion as "a further precautionary measure to obtain leave of Court for Executive Risk to continue to pay the defense costs...."[7] The Trustee's Response[8] confirmed his belief that the proceeds of the Policy were property of the estate. Although the Trustee did not object in principle to the Motion for Payment, the Trustee argued that the payment of fees and expenses to McLaughlin & McCaffrey should be subject to Court approval of periodic Fee Applications to ensure the reasonableness of the use of estate assets. The Trustee felt that such oversight was necessary since "Executive Risk, faced with a significant and substantial indemnity obligation, may not have a sufficient interest in keeping the fees and expenses of Movants' counsel reasonable, to satisfy the concerns of the Trustee."[9]

At the hearing before this Court on October 11, counsel for the Executive and Management Committee made clear its own belief that the proceeds of the Policy were *not* property of the estate, and therefore not subject to the scrutiny of the Court. The Court directed the parties to supplement their briefs on the issue of whether the proceeds of the Policy are property of the estate. On October 18, 2005 the Court heard again from both parties, and the matter was taken under advisement.

The Executive and Management Committee emphasizes its assertion that the Motion for Payment was filed only as a precautionary measure, in the event that the proceeds of the Policy were found to be property of the estate. Therefore, the position of the Executive and Management Committee rests on alternate grounds: 1) that the proceeds of the Policy are not property of the estate, and 2) that even if the proceeds are property of the estate, the Court's supervision is unnecessary since Executive Risk is "in the best position to determine the reasonableness of defense costs...."[10] Further, since Executive Risk has a right to rescind coverage, there is no guarantee to coverage, and therefore "Executive Risk has a direct incentive to preserve all available proceeds available under the Management Liability Policy."[11] Finally, the Executive and Management Committee argues that the Trustee has not provided any criteria for the Court to assess reasonableness, and that the need to justify such costs will risk the disclosure of privileged work product and defense strategy information.

The Trustee argues that regular supervision through fee applications is a prudent, and necessary, requirement for the Court to oversee the administration of the assets of the estate. The Trustee asserts that the proceeds of the Policy are assets of the estate subject to this Court's supervision.[12] In this situation, where "the

---

**7.** Motion for Payment, at ¶ 17.

**8.** Response to Motion of Executive and Management Committee Members for an Order Permitting Payment of Attorney's Fees by the Debtor's Insurer ("Trustee's Response").

**9.** Trustee's Response, at ¶ 4.

**10.** Joint Supplemental Brief of Executive & Management Committee Members and Frank LaManna in Support of Motion for an Order Permitting Payment of Attorneys Fees ("Joint Brief for Payment"), at 7.

**11.** *Id.*

**12.** The Trustee also argues that the Court should not consider the contrary arguments of the Executive and Management Committee, since the issue was not contested in the Motion for Payment. A close reading of the Motion for Payment however, notes that although the issue was not argued, it was also not conceded by counsel for the Executive and Management Committee.

question may ultimately be who is entitled to be paid the proceeds of the insurance policy, and not whether there is liability, the insurance company may be less concerned about preventing the dissipation of policy proceeds in the course of providing a defense to the insureds." [13] The Trustee adds the further assertion that because McLaughlin & McCaffrey serves as both counsel to the Executive and Management Committee members that have reached settlement agreements with the Trustee, and those named as defendants in the adversary proceeding, a conflict of interest exists. Therefore, the Trustee proffers that he will not object to employment of separate counsel for the settling Executive and Management Committee members.

\* \*

■ The automatic stay provision of the Bankruptcy Code applies to proceeds of the Policy if they are deemed to be property of the estate. 11 U.S.C. § 362(a)(3). Property of the estate is defined as "all legal or equitable interests of the debtor in property as of the commencement of the estate." 11 U.S.C. § 541(a)(1). The Supreme Court has interpreted § 541(a)(1) broadly. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204–05, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). "The Trustee has the initial, prima facie burden to show that the Debtor has an ownership interest in property; thereafter, the burden of proving that property is removed from the ambit of the estate under Section 541(d) is on the party claiming the equitable interest." *In re Doug Baity Trucking, Inc.,* 2005 WL 1288018, \*2 (Bankr.M.D.N.C. 2005); *In re Tri–River Trading, LLC,* 329 B.R. 252, 263 (8th Cir. BAP 2005); *In re Spivey,* 1998 WL 34066138, \*2 (Bankr. S.D.Ga.1998).

Insurance policies have been generally deemed to be property of the estate. *See, e.g., In re Edgeworth,* 993 F.2d 51, 55 (5th Cir.1993); *MacArthur Co. v. Johns–Manville Corp.,* 837 F.2d 89, 92 (2d Cir.1988); *In re A.H. Robins,* 788 F.2d 994, 1001 (4th Cir.1986); *Scrima v. John Devries Agency, Inc.,* 103 B.R. 128, 132 (W.D.Mich. 1989). "Although the courts readily agree that directors' and officers' insurance policies themselves are property of a debtor's estate, there is more discord regarding the question of whether proceeds of such policies constitute estate property." *In re Medex Regional Laboratories, LLC,* 314 B.R. 716, 720 (Bankr.E.D.Tenn.2004); *In re Louisiana World Exposition, Inc.,* 832 F.2d 1391, 1399 (5th Cir.1987) ("The question is not who owns the policies, but who owns the liability proceeds."). Courts have been guided by "the language and scope of the policy at issue not by broad, general statements," *In re Allied Digital Technologies Corp.,* 306 B.R. 505, 509 (Bankr.D.Del.2004); *In re Youngstown Osteopathic Hospital Ass'n,* 271 B.R. 544, 550 (Bankr.N.D.Ohio 2002).

While the terms of the subject policies may dictate divergent results, courts have consistently held that "if a debtor does not have a direct interest in the proceeds of the insurance policy, the insurance proceeds are no longer property of the debtor's estate." *In re Youngstown,* 271 B.R. at 548 (citing *In re Louisiana World Exposition,* 832 F.2d at 1394); *In re Medex,* 314 B.R. at 720–21; *In re CyberMedica,* 280 B.R. 12, 16 (Bankr.D.Mass.2002). Two factors that courts have considered in making this determination are whether "the debtor's estate is worth more with them then without them," *In re CyberMedica,* 280 B.R. at 17 (quoting *In re Minoco Group of Companies, Ltd.,* 799 F.2d 517, 519 (9th Cir.1986)), and "whether the debt-

---

**13.** Trustee's Second Supplement to Trustee's Response, at 4.

or would have a right to receive and keep those proceeds when the insurer paid on a claim." *In re Edgeworth*, 993 F.2d 51, 55 (5th Cir.1993). In *In re Allied Digital*, the bankruptcy court examined four categories of directors' and officers' policies, holding that:

[(1)] when a debtor's liability insurance policy provides direct coverage to the debtor the proceeds are property of the estate, because the proceeds are payable to the debtor.

[(2)] Further, when the liability insurance policy only provides direct coverage to the directors and officers the proceeds are not property of the estate.

[(3)] However, when there is coverage for the directors and officers and the debtor, the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution.

[(4)] Lastly, when the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate.

*In re Allied Digital*, 306 B.R. at 512; *In re Medex*, 314 B.R. at 721.

\* \* \*

■ The Trustee has presented a prima facie case that the proceeds of the Policy are property of the estate, since the Policy expressly defines the insured entities to include both the Executive and Management Committee members and the Debtor itself.[14] *See In re Louisiana World Exposition*, 832 F.2d at 1400; *In re Allied Digital*, 306 B.R. at 511; *In re Sacred Heart Hospital of Norristown*, 182 B.R.

413, 419–20 (Bankr.E.D.Pa.1995) ("More important, however, is the fact that the Debtor's own liability exposure is also covered by the D & O Policy. Proceeds available for the Debtor's liability exposure are not segregated from the Proceeds available to the directors and officers. Thus, the Debtor is indeed an insured and has a sufficient interest in the Proceeds as a whole to bring them into the estate.").

Herein, the subject policy is not a policy which expressly limits coverage solely for the directors and officers, or a policy that only includes director and officer liability coverage and indemnity coverage. *Holloway v. Dane*, 316 B.R. 876, 882 (S.D.Miss. 2004) (policy covering only officers and directors); *In re Youngstown*, 271 B.R. at 550 (policy included director and officer liability coverage and indemnity coverage, but no entity coverage). Item 3 of the Policy provides that the Limit of Liability (inclusive of Defense Expenses) is $5 million, which is the "maximum aggregate Limit of Liability of all Claims under this Policy."[15] The Policy does not segregate the policy limitations on the basis of whether the covered entity is the directors and officers, the indemnity obligation of the Debtor, or the Debtor itself. If a direct claim against the Debtor directly were to arise, such claim would compete for available coverage under the $5 million policy limitation. *In re First Cent. Financial Corp.*, 238 B.R. 9, 18 (Bankr.E.D.N.Y. 1999) ("In such situations, the debtor's entity coverage competes for proceeds with the officer and director liability portion of the insurance policy. For every dollar paid out to the officers and directors there is one less dollar of coverage protecting the debtor's estate."). Under such a policy, "[a] debtor's interest in the proceeds

---

14. Endorsement No. 1 to the Policy.

15. Item 3 of Declarations of the Policy.

requires protection from depletion and overrides the interest of the directors and officers." *In re Allied Digital,* 306 B.R. at 511; *In re Sacred Heart,* 182 B.R. at 420. *But see In re Doug Baity Trucking, Inc.,* 2005 WL 1288018, at *7 ("The mere fact that the use of insurance to proceeds to pay claims against the estate has an effect on the administration of the estate, however, is an insufficient reason to deem those proceeds property of the estate pursuant to Section 541 of the Bankruptcy Code.").

■ The Executive and Management Committee may overcome the Trustee's prima facie case by showing that the Debtor's entity coverage no longer provides a benefit to the estate. In certain situations the entity coverage provided by a D & O policy may, as a practical matter, no longer provide a benefit to the Debtor. *In re CHS Electronics, Inc.,* 261 B.R. 538, 543 (Bankr.S.D.Fla.2001) ("Although a portion of the Proceeds could *conceivably* constitute property of the estate based on the Entity Coverage, there is *in actuality* no Entity Coverage issue here.") (emphasis in original). In these circumstances, it has been held that the proceeds of the D & O policy are not property of the estate. *In re First Cent. Financial Corp.,* 238 B.R. at 19 (Where "entity coverage is hypothetical and fails to provide some palpable benefit to the estate, it cannot be used by a trustee to lever himself into a position of first entitlement to policy proceeds."). In *First Central Financial,* the bankruptcy court examined a D & O policy which included an endorsement (also referred to by the court as a rider) providing for entity coverage to the debtor for certain securities violations. *Id.* at 14. The court noted that "[t]he mere appendage of entity coverage to this Policy by way of a rider, providing the Debtor with protection from securities claims, does not provide sufficient predicate, per se, to metamorphose the pro-

ceeds into estate property." *Id.* at 18. The court noted that no claims were filed, pending, or even contemplated under the limited scope of the policy's entity coverage, and therefore "[w]e are skeptical that any individual or entity will ever emerge to assert such claims prior to the expiration of the discovery period...." *Id.* at 18–19.

■ The Debtor's entity coverage under the subject policy does not give the Court sufficient reason for similar skepticism. The Executive and Management Committee has not offered any reason why a direct suit against the Debtor is either practically or procedurally untenable. The terms of the Policy expressly provide for direct coverage of the Debtor, and the Executive and Management Committee has not provided any evidence to show why such terms are no longer operative. Nor has the Executive and Management Committee indicated that any applicable time limits (such as a statute of limitations or a discovery limitation in the policy) would prevent such a claim from being brought at this time (especially given that the Trustee's Complaint was filed in September of 2005). *See In re Medex,* 314 B.R. at 723; *In re First Cent. Financial,* 238 B.R. at 18 n. 11. Therefore, the Executive and Management Committee has not produced evidence showing that the Debtor's entity coverage is merely hypothetical, either as a practical matter, or pursuant to the terms of the policy. Although the Trustee has not raised the existence of any pending or contemplated actions directly against the Debtor, it is the Executive and Management Committee's burden, and not the Trustee's, to show that the Debtor's entity coverage in this case provides the Debtor with no "specific, discernable interest." *See In re Medex,* 314 B.R. at 721. *But see In re Allied Digital,* 306 B.R. at 513 (finding that the Trustee had made no credible

showing that the direct coverage under the policy had any continuing vitality).

Based on the foregoing, the Executive and Management Committee has not presented evidence to rebut the finding that the Policy includes entity coverage, and is therefore property of the estate.

\* \* \* \*

■ Once the Court determines that insurance proceeds are property of the estate, those proceeds are distributed pursuant to the Bankruptcy Code and are subject to the automatic stay. *In re Edgeworth*, 993 F.2d at 56 n. 21; *In re Doug Baity Trucking*, 2005 WL 1288018, at \*5; *In re Metropolitan Mortg. & Securities Co., Inc.*, 325 B.R. 851, 857 (Bankr. E.D.Wash.2005). Section 362(d)(1) permits the Court to grant relief from the automatic stay for cause. 11 U.S.C. § 362(d)(1). "The party seeking to establish the existence of 'cause' for relief from the stay bears the initial burden of proof." *In re Shultz*, 325 B.R. 197, 201 (Bankr. N.D.Ohio 2005).

■ The Court finds that there is cause to lift the automatic stay because the Executive and Management Committee members may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments to fund their defense of the Trustee's Complaint. *In re Allied Digital*, 306 B.R. at 514 ("Without funding, the Individual Defendants will be prevented from conducting a meaningful defense to the Trustee's claims and may suffer substantial and irreparable harm. The directors and officers bargained for this coverage."); *In re CyberMedica*, 280 B.R. at 18. Additionally, the harm to the Debtor if relief from stay is granted is speculative since there have been no identified claims for indemnification nor entity coverage. *In re Allied Digital*, 306 B.R. at 514. The Trustee has indicated that it does not oppose such relief.

■ The Trustee, however, argues that such conditions should be imposed in the form of the submission of monthly fee applications for Court approval. This Court has the authority to impose appropriate conditions upon the relief from the automatic stay. *E.g., Eastern Refra. Co. Inc. v. Forty Eight Insul. Inc.*, 157 F.3d 169, 172 (2d Cir.1998) ("bankruptcy courts have the plastic powers to modify or condition an automatic stay so as to fashion the appropriate scope of relief"); *In re Lopez–Soto*, 764 F.2d 23, 28 (1st Cir.1985); *Browning v. Navarro*, 743 F.2d 1069, 1074 and 1084 (5th Cir.1984) (court has authority and discretion to fashion relief according to the needs in a particular bankruptcy proceeding); *In re Chari*, 262 B.R. 734, 736 (Bankr.S.D.Ohio 2001). Federal Rule of Bankruptcy Procedure 2016 provides that

> Any entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.... The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity....

FED. R. BANKR.P. 2016(a). The Court finds that the payment of attorney's fees is subject to approval of an application for compensation or reimbursement, as provided by Federal Rule of Bankruptcy Procedure 2016.

Finally, the Trustee suggests that a conflict of interest exists as to counsel for the Executive and Management Committee, since it has joined the objection to the

settlement of several former partners with the Trustee. This proposed settlement includes six (6) former Executive and Management Committee members. None of these individuals has indicated a concern to the representation of McLaughlin & McCaffrey, nor have they requested such relief. This suggestion should be considered only after properly placed before the Court, with notice and opportunity for hearing and briefing by all interested parties.

\* \* \* \* \*

Accordingly, the Motion of Executive and Management Committee Members for an Order Permitting Payment of Attorney's Fees by the Debtor's Insurer is well-premised and is hereby granted. Each party is to bear its respective costs.

**IT IS SO ORDERED.**

### *JUDGMENT*

In Cleveland, in said District, on this—29th—day of November, 2005.

A Memorandum Of Opinion And Order having been rendered by this Court in this matter.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the Movants' Motion for an Order Permitting Payment of Attorney's Fees by the Debtor's Insurer is hereby granted. Each party is to bear its respective costs.

**IT IS SO ORDERED.**