## In re ALLIED DIGITAL TECHNOLOGIES CORP., et al., Debtors.

### Nos. 00–4020(CGC) to 00–4024(CGC).

United States Bankruptcy Court, D. Delaware.

March 16, 2004.

Adam Singer, Jeoffrey L. Burtch, Cooch and Taylor, Wilmington, DE, Martin G. Bunin, Jonathan E. Polonsky, Thelen, Reid & Priest LLP, Margaret Garns, New York City, Attorneys for the Chapter 7 Trustee.

Brendan L. Shannon, Curtis J. Crowther, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, DE, Robert Fryd, Donald M. Levinsohn, Warshaw, Burstein, Cohen, Schlesinger & Kuh, LLP, New York City, Attorneys for Individual Defendants, and Brain A. Sullivan, Werb & Sullivan, Wilmington, DE, Special Counsel for Individual Defendants, for this motion only.

## MEMORANDUM DECISION

CHARLES G. CASE, II, Bankruptcy Judge.

Before this Court is the Motion of William H. Smith, George N. Fishman, Donald L. Olesen, John K. Mangini, Seymour Leslie, Werner H. Jean, Eugene A. Gargaro, Jr., and H. Sean Mathis for an Order Authorizing Reimbursement of Defense Costs and/or Settlement Amounts and/or Judgments Under Directors, Officers, and Corporate Liability Insurance Policy (the "Motion") (Docket No. 1031) and Allied Digital Technologies' opposition thereto. The first issue presented is whether the proceeds from the Allied Digital's Directors, Officers and Corporate Liability Insurance Policy (the "D & O Policy") are property of the Chapter 7 estate within the meaning of 11 U.S.C. §§ 541 and 542. Second, if the D & O Policy proceeds are property of the estate, should this Court modify the automatic stay to allow payment to the directors and officers for defense costs in accordance with the terms of the D & O Policy. For the following reasons, the Court grants the Motion.

## FACTS

On October 25, 2000 (the "Petition Date"), Allied Digital Technologies, Corp. ("Allied Digital") filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The bankruptcy proceeding was converted to a Chapter 7 proceeding on June 17, 2002. The Office of the United States Trustee appointed Jeoffrey L. Burtch as Chapter 7 Successor Interim Trustee (the "Trustee").

On October 24, 2002, the Trustee filed the action captioned *Jeoffrey Burtch as the Chapter 7 Trustee for the Allied Digital Technologies Corp., et al. v. William H. Smith, et al.,* Case No. 02–06153 (the "Adversary Proceeding") in which William H. Smith, George N. Fishman, Donald L. Olesen, John K. Mangini, Seymour Leslie, Werner H. Jean, Eugene A. Gargaro, Jr., and H. Seàn Mathis (collectively the "Individual Defendants") are named as former directors and/or officers of Allied Digital. The Trustee seeks damages in excess of $62,000,000 in connection with the September 23, 1998 leveraged buyout. On May 16, 2003, the Individual Defendants filed a Motion for Withdrawal of Reference and Motion to Determine that the Tenth through Thirteenth Causes of Action Asserted in the Adversary Proceeding Constitute Non-core Claims. This Court granted the Individual Defendants' core/non-core motion on January 27, 2004. The Motion for Withdrawal is pending before District Judge Kent A. Jordan, Case No. 03–CV–937.

Both the Trustee and the Individual Defendants assert rights under the National Union's Directors, Officers and Corporate Liability Insurance Policy No. 770–55–99 (the "D & O Policy") issued to Allied Digital. The D & O Policy has a $15,000,000

Limit of Liability, and $5,000 Retention per Director or Officer for non-identifiable Loss, subject to a maximum of $50,000 for such loss. The D & O Policy provides coverage to the directors and officers for liability and defense costs, indemnification coverage to Allied Digital, and coverage to Allied Digital for securities claims. The D & O Policy has a single limit for all three types of claims.

On November 4, 2003, the Individual Defendants filed their motion seeking an order authorizing reimbursement for defense costs under the D & O Policy. The Trustee objected on December 4, 2003. Oral argument on the motion was January 13, 2004, at which time the Court denied the Individual Defendants' motion to file a reply to the Trustee's objection. However, the Court allowed each party to file supplemental memorandum of law in support of their respective positions. A Notice of Completion of Briefing was filed on January 29, 2004. Shortly thereafter, the Individual Defendants filed a Motion for an Order Authorizing the Filing of a Reply to Trustees' Supplemental Memorandum of Law; the motion was granted on March 8, 2003. The Individual Defendants' Reply was filed two days later.

## POSITION OF THE PARTIES

### A. *Overview:*

The conundrum of this case is that both the Trustee, as plaintiff, and the Individual Defendants seek to be paid from the same wasting D & O Policy. Every dollar spent on defense costs lessens the pot available for the Trustee if he prevails in the litigation. At the same time, any effort by the Trustee to restrict the amount paid to defense counsel potentially harms the Individual Defendants' bargained for right to defend themselves against claims brought by the very same person. While the Trustee's concern is understandable, his posi-

tion is not supported by either the D & O Policy or the case law.

### B. *Individual Defendants' Position:*

The Individual Defendants claim they are the named insureds under Coverage A of the D & O Policy. They argue that Coverage A provides direct coverage for any judgment and/or settlements and defense costs in connection with the Trustee's Adversary Proceeding except when the company has indemnified them. The Trustee, on behalf of Allied Digital, has neither indemnified nor intends to indemnify the directors and officers; therefore, the Individual Defendants seek payment from National Union (the "Insurer") for their defense costs.

In addition, the Individual Defendants argue that the direct coverage of Allied Digital, under Coverage B(i), no longer applies because all securities claims have already been adjudicated and/or are barred by the applicable statute of limitations. Moreover, Coverage B(ii) protects Allied Digital only when the company has indemnified the directors and officers. Clearly, this will not occur if they receive payment from the Insurer for their defense costs; having been paid, the Individual Defendants would have no basis for an indemnification claim against Allied Digital.

Simply put, Individual Defendants argue that they bargained for protection from precisely the claims now asserted and it would be manifestly unfair for that protection to be limited for the benefit of the plaintiff who is suing them.

### C. *Chapter 7 Trustee's Position:*

The Trustee agrees that the Individual Defendants are the named insureds under Coverage A of the D & O Policy for a judgment or settlement and defense costs

in the adversary proceeding. However, the Trustee asserts that Coverage A does not apply in this situation because the Individual Defendants are indemnified by Allied Digital. The Trustee acknowledges that the Individual Defendants may be entitled to broader coverage under Coverage A of the D & O Policy than Allied Digital's indemnification obligation under its bylaws and thus argues that coverage is available under both Coverage A for the Individual Defendants and Coverage B for Allied Digital.

The Trustee argues that because Coverage B(ii) provides coverage to Allied Digital for indemnification of the directors and officers, the insurance proceeds pass to the bankruptcy estate for the purpose of indemnification. In addition, the Trustee does not oppose the payment to the Individual Defendants for defense costs to the extent that those costs are reasonable. However, the Trustee is concerned that because the D & O Policy is a wasting policy, the total of the defense costs and any judgment or settlement will probably exceed the D & O Policy limit. The Trustee argues that there should be a limit on the defense costs because if the proceeds of the policy are substantially depleted it would defeat the purpose of his lawsuit. Moreover, the proceeds would be paid to lawyers and experts over creditors of Allied Digital. Thus, the Trustee seeks this Court's equity power to fashion a remedy to protect the long-term interests of the Trustee and the Estate.

### JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (G), and (O).

### DISCUSSION

Section 541(a)(1) of the Bankruptcy Code provides that property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Supreme Court has interpreted § 541(a)(1) broadly. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). In fact "an overwhelming majority of courts have concluded that liability insurance policies fall within § 541(a)(1)'s definition of estate property." *In re Vitek, Inc.*, 51 F.3d 530, 533 (5th Cir.1995); *accord, Ochs v. Lipson (In re First Central Financial Corp.)*, 238 B.R. 9, 16 (Bankr. E.D.N.Y.1999); *In re CyberMedica, Inc.*, 280 B.R. 12, 15 (Bankr.D.Mass.2002). Property of the estate is protected by an automatic stay which is imposed as of the petition date and stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

■ There are many bankruptcy cases distinguishing liability insurance policies and proceeds from those policies. Generally a debtor's liability insurance policy is property of the bankruptcy estate. *See In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir.1987). However, the courts are in disagreement over whether the proceeds of a liability insurance policy are property of the estate. The Individual Defendants and the Trustee cite numerous cases in support of their respective positions on this issue. However, the cases are controlled by the language and scope of the policy at issue not by broad, general statements. *See In re CyberMedica, Inc.*, 280 B.R. at 16 (a determination whether the proceeds of a directors and officers' liability insurance policy is a fact-based analysis); *accord, In re First Central Financial Corp.*, 238 B.R. at 21. The outcome usually hinges on who is

the named insured under the liability insurance policy because liability policies are held by insureds as protection against claims that may be asserted against them. *See In re Minoco Group of Companies, Ltd.,* 799 F.2d 517, 519 (9th Cir.1986).

### 1. *Allied Digital's D & O Policy:*

It is uncontested that Endorsement 22 of the D & O Policy provides for three types of coverage. Endorsement 22 states, in relevant part, as follows:

Coverage A: Directors and Officers Insurance:

This policy shall pay the Loss of each and every Director or Officer of the Company arising from a Claim first made against the Directors or Officers during the Policy Period ... for any actual or alleged Wrongful Act occurring on or prior to the Effective Time in their respective capacities as Directors or Officers of the Company, except when and to the extent that the Company ... has indemnified the Directors or Officers. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

Coverage B: Corporate Liability Insurance:

This policy shall pay the Loss of the Company ... arising from a:

(i) Securities Claim first made against the Company, or

(ii) Claims first made against the Directors and Officers, during the Policy Period ... and reported to the Insured pursuant to the terms of this policy for any actual or alleged Wrongful Act occurring on or prior to the Effective Time, but, in the (ii) above, only when and to the extent that the Company ...

has indemnified the Directors or Officers of such Loss ... The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

Endorsement 22 to Allied Digital's D & O Policy.

Generally, when insurance policies provide direct coverage to directors and officers, the proceeds of the insurance policy are not property of the bankruptcy estate because the proceeds are payable to the directors and officers not the estate. *See Louisiana World Exposition Inc.,* 832 F.2d at 1399 (the debtor has no ownership interest in proceeds from a liability policy where the obligation of the insurance company is only to the directors and officers who are the named and the only insured); *In re Daisy Sys. Sec. Litig.,* 132 B.R. 752, 755 (N.D.Cal.1991) (the court held that when the directors and officers' liability insurance policy provides direct coverage to the directors and officers the proceeds are not property of the estate to be divided among the debtor's creditors).

Here, the D & O Policy Clause A provides direct coverage to the directors and officers for any judgments and/or settlements in connection with a covered claim, as well as defense costs, but only if Allied Digital has not indemnified the directors and officers. If indemnified, then Allied Digital would be entitled to reimbursement of the indemnified amounts under Clause B. In either event, the coverage follows the liability—the party who is obligated to pay gets the coverage. In the case of Allied Digital, the D & O Policy requires actual payment of indemnified costs[1] before the coverage will either be denied to the Individual Defendants under Clause A or given

---

**1.** "only when and to the extent that the Company ... *has indemnified* the Directors and Officers of such Loss ..." Endorsement 22, Clause B, (emphasis added).

to Allied Digital under Clause B. This has not happened here.

In addition, when a liability insurance policy provides direct coverage to a debtor the proceeds of the policy are property of the bankruptcy estate. Thus, the debtor is entitled to payment of the proceeds and those proceeds should be protected as property of the estate.

Here, the parties agree that the D & O Policy provides direct coverage for securities claims first made against Allied Digital. However, the Individual Defendants allege that the coverage to Allied Digital no longer exists because all securities claims have already been adjudicated and/or are barred by the applicable statute of limitations.[2] The Trustee disagrees but provides no basis for disputing this position. It follows that if Allied Digital is no longer covered by the D & O Policy, policy proceeds no longer constitute property of the bankruptcy estate.

When a liability insurance policy provides direct coverage to the debtor as well as the directors and officers, the general rule is that since the insurance proceeds may be payable to the debtor they are property of the debtor's estate. *See In re Sacred Heart Hosp. of Norristown,* 182 B.R. 413, 419–420 (Bankr.E.D.Pa.1995)

(the insurance policy provided direct coverage to the debtor as well as indemnification coverage; the court held that the debtor was an insured and had a sufficient interest in the insurance proceeds as a whole to bring them into the bankruptcy estate). A debtor's interest in the proceeds requires protection from depletion and overrides the interest of the directors and officers.

In cases where the directors and officers' liability insurance policy provides only indemnification coverage to the company, the courts disagree whether the proceeds of the policy are property of the bankruptcy estate. For example, when a third party brings an action against directors and officers and the debtor has indemnification coverage under a directors and officers policy, the courts are split as to whether the proceeds from the policy are property of the estate. *See In the Matter of Jasmine, Ltd.,* 258 B.R. 119, 128 (D.N.J.2000) (the court held that the debtor's "duty of indemnification was established and not merely speculative," entitling the debtor to the insurance proceeds, therefore the proceeds were property of the bankruptcy estate); *In re Circle K Corp.,* 121 B.R. 257, 261–262 (Bankr.

---

**2.** "[T]he D & O Policy covers only alleged wrongful acts occurring 'on or prior to' the September 24, 1998 effective date of the merger, any securities fraud claims against the Debtors would be long time-barred by the applicable statute of limitations (one year discovery or three years after the alleged violation, whichever is earlier)"; *(citation omitted)....*

... any such claims against the Debtors would separately be barred by release and *res judicata,* by virtue of the Final Judgment entered June 3, 1999, pursuant to a Stipulation of Settlement entered March 10, 1999, in the class action entitled *Crandon Capital Partners v. George N. Fishman, Williams H. Smith, Donald L. Olesen, Werner H. Jean, H. Sean Mathis, Seymour Leslie, John A. Morgan, Eu-*

gene A. Gargaro, *Jr. and Allied Digital Technologies Corp.* (Del. Ch., New Castle Cty, C.A. No. 16360–NC). The Final Judgment in the *Crandon* action certified a class consisting of all record and beneficial owners of Allied Digital common stock through September 23, 1998 (*i.e.,* the same time-period covered by the D & O Policy), and released and discharged, on behalf of the class, any and all claims against the defendants, including Allied Digital (the Debtor herein) and its successors or trustees, "that have been, could have been, or in the future can or might be asserted," relating to the *Crandon* action, the claims asserted therein, or the merger transaction. (Final Judgment ¶¶ 2, 4.)" Individual Defendants' Brief p. 16.

D.Ariz.1990) (the court stayed a securities action against the directors and officers because the debtor could be required to reimburse the directors and officers if the insurer did not pay them, and there was a possibility of future indemnification claims); *but see, In re Adelphia Communications Corp.*, 302 B.R. 439, 448 (Bankr. S.D.N.Y.2003) (on remand, the court held that the directors and officers' liability insurance policy proceeds were not property of the bankruptcy estate because, although the policy provided indemnification coverage to the debtors, it was not shown that any of the debtors made payments for which it would be entitled to indemnification coverage, such payments were not contemplated, and the debtors had not committed themselves to payments using their coverage); *In re Imperial Corp. of America*, 144 B.R. 115, 118–119 (Bankr. S.D.Cal.1992) (although the directors and officers' liability policy provided indemnification coverage to the debtor, the court, following the *In re Louisiana World Exposition, Inc.* case, held that the proceeds from the liability policy were not property of the estate because the debtor's exposure was capped by the debtor's confirmation).

However, when a suit is brought on behalf of the debtor, the courts generally hold that the debtor is merely an indirect insured and the proceeds are not property of the estate. In the *In re First Central Financial Corp.* case, the court held that if the entity coverage is "hypothetical and fails to provide some palpable benefit to the estate, it cannot be used by the trustee to leverage himself into a position of first entitlement to policy proceeds." 238 B.R. at 18. Thus, the court was unwilling to divest the directors and officers of liability protection and payment of legal fees because the policy was for their protection and not a vehicle for corporate protection. *Id.* at 21; *see also, Youngstown Osteopathic Hosp. Ass'n v. Ventresco (In re Youngs-*

*town Osteopathic Hosp. Ass'n)*, 271 B.R. 544, 550 (Bankr.N.D.Ohio 2002) (the court concluded that the insurance policy included director and officer liability coverage and indemnification coverage and not entity coverage, since the entity had not paid any defense costs it was not entitled to reimbursement, thus the proceeds were not property of the bankruptcy estate); *Zenith Lab. Inc. v. Sinay (In re Zenith Lab., Inc.)*, 104 B.R. 659, 665 (D.N.J.1989) (an insurance policy purchased by a debtor is only an asset to the extent that it increases the debtor's worth or diminishes it liabilities. Since the debtor was not required to indemnify the directors and officers, the proceeds of the insurance policy were not property of the bankruptcy estate).

■ The Court concludes that when a debtor's liability insurance policy provides direct coverage to the debtor the proceeds are property of the estate, because the proceeds are payable to the debtor. Further when the liability insurance policy only provides direct coverage to the directors and officers the proceeds are not property of the estate. However, when there is coverage for the directors and officers and the debtor, the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution. Lastly, when the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate. That is the situation here.

■ Here, the Trustee brought the action against the directors and officers. The policy in question provides direct coverage to the directors and officers for

claims and defense costs (which are real), and indemnification coverage to the company for amounts paid to the directors and officers (which is hypothetical). The Trustee has made no credible showing that the direct coverage of Allied Digital under Clause B(i) for securities claims has any continuing vitality. The Trustee's real concern is that payment of defense costs may affect his rights as a plaintiff seeking to *recover from* the D & O Policy rather than as a potential defendant seeking to be *protected by* the D & O Policy. In this way, Trustee is no different than any third party plaintiff suing defendants covered by a wasting policy. No one has suggested that such a plaintiff would be entitled to an order limiting the covered defendants' rights to reimbursement of their defense costs.

The bottom line is that the Trustee seeks to protect the amount he may receive in his suit against the directors and officers while limiting coverage for the defense costs of the directors and officers. This is not what the directors and officers bargained for. In bringing the action against the directors and officers, the Trustee knew that the proceeds could be depleted by legal fees and he took that chance. The law does not support the Trustee's request to regulate defense costs.

2. *Relief From the Automatic Stay:*

■ Even if the proceeds from the D & O Policy were property of the bankruptcy estate, however, the automatic stay should be lifted. It is not uncommon for courts to grant stay relief to allow payment of defense costs or settlement costs to directors and officers, especially when there is no evidence that direct coverage of the debtor will be necessary. For example, in *In re CHS Elecs., Inc.* 261 B.R. 538 (Bankr. S.D.Fla.2001), the policy provided direct coverage to the directors and officers, as well as indemnification coverage, and direct coverage to the debtor for securities claims. 261 B.R. at 540. The court held that the bankruptcy estate had no property interest in the proceeds available for coverage of the claims against the directors and officers. *Id.* at 542. The direct coverage to the debtor was no longer a basis for treating the proceeds as property of the estate because all of the covered claims that could be brought against the debtor were discharged. *Id.* at 543. In addition, to the limited extent that proceeds could be considered property of the estate to satisfy the debtor's indemnification claims, the automatic stay would apply; however, the court would grant relief from stay for cause under § 365(d)(1) because the Trustee could collect indemnifications claims from the remaining proceeds. *Id.*

Similarly, in *In re CyberMedica, Inc.,* the liability insurance policy provided direct coverage to the directors and officers, including defense costs, and coverage to the debtor for indemnification and third party claims. The court applied "a fundamental test that has been used in determining whether or not property of belongs to the estate ... 'whether the debtor's estate is worth more with them then without them'(*citation omitted)* " and determined that the proceeds were property of the estate. 280 B.R. at 17. The court found that there was cause to lift the automatic stay because the directors and officers would "suffer substantial and irreparable harm if prevented from exercising their rights to defense payments." *Id.* at 18. In addition, the debtor would not be harmed because the defense costs being paid were ultimately the obligation of the debtor to indemnify the directors and officers. *Id.*

Here, the Trustee asserts that the Individual Defendants failed to meet its burden, but agrees that the automatic stay should be lifted to (i) permit payment of settlements or judgments covered by the policy that benefit Allied Digital's creditors and (ii) permit the Insurer to advance reasonable attorney's fees subject to a reasonable cap, and the Court's review as needed at a later date, thus limiting the defense costs but not allowing unsupervised or unlimited dissipation of the policy proceeds.

Currently the Individual Defendant's defense costs are $200,000. Without funding, the Individual Defendants will be prevented from conducting a meaningful defense to the Trustee's claims and may suffer substantial and irreparable harm. The directors and officers bargained for this coverage. On the other hand, the Trustee, as plaintiff, is not an insured and is not seeking to protect direct coverage to the debtor. Even if the Trustee had a right to the proceeds, as an insured and not as a plaintiff, that right is hypothetical—the Trustee provided no evidence that an actual claim will be brought against Allied Digital requiring direct coverage. Moreover, any payment of defense costs will remove any indemnification claim the Individual Defendants would have against Allied Digital, and Allied Digital is entitled to indemnification proceeds only when and to the extent it has indemnified the directors and officers.

### CONCLUSION

For the reasons set forth above, the proceeds of the Allied Digital D & O Policy are not property of the bankruptcy estate. Even if they were property of the estate, the Individual Defendants have shown cause for stay relief. Therefore, the Insurer is authorized to advance defense costs to the Individual Defendants in accordance with the terms of the D & O Policy.

### ORDER

**AND NOW,** this 16th day of March, 2004, upon consideration of the Motion of William H. Smith, George N. Fishman, Donald L. Olesen, John K. Mangini, Seymour Leslie, Werner H. Jean, Eugene A. Gargaro, Jr., and H. Sean Mathis (collectively the "Individual Defendants") for an Order Authorizing Reimbursement of Defense Costs and/or Settlement Amounts and/or Judgments Under Directors, Officers, and Corporate Liability Insurance Policy (Docket No. 1031), and the opposition thereto, and for the reasons set forth in the accompanying Memorandum Decision; it is hereby

**ORDERED** that the Individual Defendants' Motion is Granted.