In re IFC CREDIT CORPORATION, Debtor.

David P. Leibowitz, as Chapter 7 Trustee for the estate of IFC Credit Corporation, Plaintiff,

v.

First Chicago Bank and Trust, et al., Defendants.

Bankruptcy No. 09 B 27094.
Adversary No. 09–01010.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 27, 2010.

John W. Guzzardo, Shaw Gussis Fishman Glantz Wolfson & Tow, Chicago, IL, for Plaintiff.

Paige E. Barr, Katten Muchin Rosenman LLP, Chicago, IL, for Defendants.

## ORDER

JACQUELINE P. COX, Bankruptcy Judge.

In this matter, the plaintiff, David P. Leibowitz, the Chapter 7 Trustee (the "Trustee") for IFC Credit Corporation ("IFC" or the "Debtor"), seeks a preliminary injunction staying the following lawsuits brought by several of the Debtor's creditors, First Chicago Bank and Trust ("FCBT" or "First Chicago"), Manufacturers and Traders Trust Company ("M & T") and CoActiv Capital Partners ("CoActiv"), against former IFC officers and directors: *First Chicago Bank and Trust v. Rudolph Trebels, et al.,* case no. 09 CH 30153 (Cir. Ct., Cook County, Ill.); *Manufacturers and Traders Trust Company, Successor By Merger to Court Square Leasing v. Trebels,* case no. 09–4192 (E.D.Pa.); and *CoActiv Capital Partners, Inc. v. IFC Credit Corp., et al.,* 09–CV– 06116 (N.D.Ill.) (collectively, the "Trebels Suits"). The Trustee's motion also seeks to enjoin any attempts by former IFC officers and directors to incur legal defense expenses or otherwise obtain possession or control of the proceeds of IFC's directors and officers ("D & O") policy administered by Greenwich Insurance Company ("Greenwich"). The lawsuits are stayed for a period of 90 days. Greenwich will not be enjoined from covering legal expenses for the former officers and directors.

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A),(B), and (O).

## II. BACKGROUND

The Debtor filed for bankruptcy protection under chapter 7 of the United States Bankruptcy Code on July 27, 2009. The Trustee speculates that the Debtor's transactions with Norvergence precipitated the Debtor's filing. Specifically, the Trustee testified that the Debtor and Norvergence entered into transactions to install high-tech telephonic equipment in various locations. *See* Transcript of Preliminary Injunction Hearing at 99, In re IFC Credit Corp., case no 09–ap–01010. It was subsequently alleged in several Texas lawsuits that the telephone equipment was not high-tech, and that IFC, through its directors and officers, and Norvergence acted in concert to lease telephone equipment and increase telephone bills in an attempt to defraud consumers. *Id.* at 100.

In administering the estate, the Trustee is required to investigate the activities of the Debtor and assess potential claims of the estate against non-debtor third parties, including Marc Langs ("Langs") and Rudolph D. Trebels ("Trebels"). Langs was IFC's Chief Financial Officer; Trebels was IFC's President. The Trustee is currently investigating potential causes of action for breach of fiduciary duties against Trebels, Langs and other former IFC officers and directors for committing fraud and converting corporate collateral for their personal use arising out of the same transactions and conduct that the plaintiffs in the Trebels Suits are seeking damages for.

On October 20, 2009, the Trustee filed an Adversary Complaint seeking a preliminary injunction and temporary restraining order to enjoin the Trebels Suits.[1] In *First Chicago Bank and Trust v. Rudolph*

*Trebels, et al.,* FCBT seeks damages based on allegations that Trebels, Langs and Lee Trebels (collectively, the "Trebels Defendants") converted collateral for their personal use, committed fraud, and engaged in a conspiracy to defraud FCBT. Specifically, FCBT alleges that the Trebels Defendants diverted loan advances from purposes required by the underlying loan agreements, withheld lease termination payments instead of paying down the FCBT loan balance as required by underlying loan documents, double-pledged collateral, and knowingly induced FCBT to participate in a Ponzi scheme. In *Manufacturers and Traders Trust Company, Successor By Merger to Court Square Leasing v. Trebels,* M & T seeks damages based on allegations that Trebels and Langs committed fraud, converted collateral for their personal use, and engaged in a conspiracy to defraud M & T. Specifically, M & T alleges that Trebels and Langs committed fraud and breached their fiduciary duties to M & T in connection with M & T's purchase from IFC of a stream of periodic lease payments, chattel paper, and certain related equipment. In *CoActiv Capital Partners, Inc. v. IFC Credit Corp., et al.,* CoActiv seeks damages based on allegations that IFC, Trebels and Langs committed fraud, converted collateral for their personal use, and engaged in a conspiracy to defraud CoActiv. The Trustee now seeks to enjoin these lawsuits and prevent IFC's former officers and directors from obtaining reimbursement of legal defense expenses through IFC's D & O insurance policy; FCBT, M & T, and CoActiv oppose the Trustee's efforts. Greenwich does not oppose the Trustee's motion and has not taken a position on the

---

**1.** This Court entered Stipulated and Agreed Orders from the parties and scheduled the hearing on the preliminary injunction on October 23, 2009. As part of the Stipulated and Agreed Orders, the Trustee withdrew his request for relief in the form of a temporary restraining order, and the Defendants were given a chance to object to the preliminary injunctive relief.

right to indemnification for any of the claims, but requests leave to pay defense costs if the court does not stay the pending lawsuits.

## III. DISCUSSION

█ The Trustee argues that the Trebels Suits should be stayed to give the Trustee an opportunity to complete his investigation and to initiate an action, if necessary, against Trebels, Langs, and other former IFC directors or officers, which collective lawsuit would benefit all of the estate's creditors and promote the orderly administration of the estate. The Trustee further argues that allowing multiple lawsuits to proceed in various venues will not only impair the orderly administration of the estate, but such actions will rapidly deplete the insurance proceeds possibly leaving nothing for the bankruptcy estate and IFC's general creditor body of approximately 13,000 creditors should the Trustee decide to pursue IFC's D & O policy for any director or officer actions amounting to breach of fiduciary duty. The Trustee argues that he has satisfied all of the requirements for a preliminary injunction. Conversely, FCBT, CoActiv and M & T argue that each creditor should be allowed to pursue its own individual claims because the Trustee cannot satisfy the requirements for a preliminary injunction pursuant to 11 U.S.C. § 105(a) because the claims asserted are personal to each Defendant. FCBT, CoActiv and M & T also argue that the proceeds of the D & O policy are not property of the estate, and thus the Trustee is not entitled to possession of any such proceeds.

*Injunctive Relief under Section 105(a)*

█ Even if the proceeds of the D & O policy are not property of the estate, which is an issue that has not been decided by the Seventh Circuit, the Trustee would still be entitled to the injunctive relief he now seeks. A bankruptcy trustee, in certain circumstances, may petition the bankruptcy court to block litigation of other claims that are not property of the estate if the litigation is sufficiently "related to" the trustee's administration of the estate. 28 U.S.C. § 1334(b). *See also Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998). Such suits may be stayed pending the outcome of the bankruptcy proceedings. *Fisher v. Apostolou*, 155 F.3d at 883. "Related to" jurisdiction arises when resolution of a claim "affects the amount of property available for distribution or the allocation among creditors." *See Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir.1989) (quoting *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987)); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 5, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). "The jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtor, to include suits to which the debtor need not be a party but which may affect the amount of property of the bankrupt estate, or the allocation of property among creditors." *Fisher*, 155 F.3d at 882 (internal citations and quotations omitted). Section 105(a) of the Bankruptcy Code allows a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Id.* (quoting 11 U.S.C. § 105(a)). For a bankruptcy court to issue an injunction blocking litigation in another court under § 105(a), the moving party must show a likelihood of success on the merits and potential harm to the public interest must be considered. *Id.* Inadequate remedy or irreparable harm need not be shown. *Id.* The Bankruptcy Code's core goals of *pro rata* distribution and orderly administration of a bankruptcy estate make injunc-

tive relief necessary and in the public's interest at this juncture.

In the case at bar, the Trustee testified that he is still investigating potential causes of action against former IFC officers and directors on behalf of the bankruptcy estate. As discussed earlier, there is substantial overlap between the conduct that the Trustee is currently investigating and the conduct that forms the basis of FCBT's, CoActiv's, and M & T's claims against Trebels, Langs, and IFC. Moreover, the Trustee and Trebels and Langs may seek insurance coverage from the same insurance policy which indemnifies IFC officers and directors. Given the number and scope of the lawsuits pending and the amount at issue in each suit[2], it is unlikely that IFC's $5,000,000 D & O policy will provide enough funds to satisfy Trebels' and Langs' legal expenses, judgments in the three lawsuits, and a judgment in favor of the Trustee on behalf of the wider creditor class of approximately 13,000 creditors. Allowing the Trebels Suits to continue could diminish the amount of funds payable to the bankruptcy estate for pro rata distributions to all creditors should the Trustee obtain a favorable judgment against Trebels and Langs.

Furthermore, while each of the Defendants' objections claims that the injuries they suffer are caused by misconduct unique and exclusive to Trebels' and Langs' dealings with each Defendant, they have failed to explain the factual circumstances underlying each of their claims that make the claims personal and peculiar. Specifically, the Trustee has discovered evidence that breaches of fiduciary duties owed by Trebels and Langs to the Debtor that facilitated these diversions were not a series of unique, separate acts

but were interrelated, such that it appears likely that most, if not all, of the Debtor's 13,000 creditors were negatively affected by these practices. This court finds that there is substantial overlap between all of the Defendants' claims and the claims contemplated by the Trustee, such that the Defendants' claims are not peculiar and personal. The Seventh Circuit has ruled that for a claim to be peculiar and personal and not subject to injunctive relief, that examination of the injury for which relief is sought is critical. In *In re Teknek*, the Seventh Circuit noted "[w]e must consider whether that injury is 'peculiar and personal to the claimant or general and common to the corporation and creditors.'" 563 F.3d 639, 647 (7th Cir.2009). In *Koch Refining v. Farmers Union Central Exchange, Inc.* the Seventh Circuit noted that the injury alleged by the oil companies was to the corporation directly and the oil companies indirectly. 831 F.2d 1339, 1349 (7th Cir.1987). There Trustee's complaint underscored that the debtor was a victim of the member-owners and was harmed directly. *Id.* Finding that the oil companies were only indirect or secondary victims, having alleged nothing about their detrimental position that was peculiar and personal to them and *not shared by ECI's creditors. Id.* (emphasis added). Here too the Trebels Suits' plaintiffs have not alleged anything that is peculiar and personal to them and not shared by the Debtor's other creditors.

When the Defendants argue that the claims they are asserting are "personal" and independent from any claim a hypothetical general creditor could assert and that their damages are peculiar, they may be doing what the Seventh Circuit anticipated in *In re Teknek*, such that if this

---

**2.** CoActiv's suit alleges over $2,000,000 in damages, costs, interest and fees, while M & T's suit alleges $940,809.94 in damages.

argument was applied in all bankruptcy cases "... all creditors' claims would be personal to the specific creditor: a supplier's claim for payment on supplies would be deemed personal because no other creditor could claim payment for the same supplies; an employee's back pay would be personal to the extent that no other employee could claim back pay for the employee's hours worked." 563 F.3d 639, 644 (7th Cir.2009). The Seventh Circuit further explained that "[i]f all such claims were 'personal,' no creditor would have to wait in line behind the bankruptcy trustee to assert her claims." *Id.* In applying the *Teknek* reasoning here, this court finds that the Defendants' claims are not personal and independent because they all arise out of the same scheme that was allegedly used to mislead and defraud almost all of the Debtor's creditors and that their injuries are identical to the injuries suffered by the general creditor body. Moreover, the damages that the Defendants allege are not peculiar because all the Defendants' claims overlap with one another and because their damages are premised upon the Debtor being vicariously liable for the misconduct of its officers and directors. The claims cannot be peculiar and personal where, as here, the Debtor is potentially vicariously liable for what Trebels and Langs are alleged to have done. *In re Monroe Well Service,* 67 B.R. 746, 751 (Bankr.E.D.Pa.1986).

■ The court overrules the individual, general objections of CoActiv and M & T as inapplicable to the case at bar. CoActiv's objection also asserted that the Trustee's potential claims may be barred by the doctrine of *in pari delicto* and therefore the Trustee cannot show a likelihood of success on the merits. However, the *in pari delicto* defense is intended for situations in which the victim is a participant in the misconduct giving rise to his claim.

This is not applicable to the Trustee since he could not be considered a "wrongdoer". *See In re Edgewater Med. Ctr.,* 332 B.R. 166, 176 (Bankr.N.D.Ill.2005); *Albers v. Cont'l Illinois Bank & Trust Co.,* 296 Ill. App. 596, 599, 17 N.E.2d 67, 69 (1938) (where an Illinois appellate court held that the doctrine of *in pari delicto* was inapplicable against a bank receiver, who, similar to a liquidator, is an administrative officer of the estate with rights, powers and duties conferred by statute and was not in the case when the misconduct occurred). M & T objects that until the terms of the policy are met, the policy is not property of the estate and thus the Trustee is not entitled to possession of any proceeds. However, because the Trustee is not requesting possession of policy proceeds in this motion, M & T's argument is inapplicable. The court finds that the Trustee has shown that he is likely to succeed on the merits of his allegations of wrongdoing by the defendants in the lawsuits to be enjoined. Surely the objectors do not disagree. To disagree they would have to disavow their claims.

With these considerations in mind, the Trustee has made a successful initial showing that he will be entitled to permanent injunctive relief under § 105(a) if he decides to pursue an action against Trebels, Langs, or any other former IFC officer or director who allegedly violated his fiduciary duties. The Trustee has shown that maintenance of the lawsuits and recovery by those plaintiffs against the policy proceeds affects the amount of monies the bankruptcy estate may recover. He has also shown that he is likely to succeed on the merits herein and that the public interest is served in providing *pro rata* distributions to all creditors, the purpose of the Bankruptcy Code. Because the Trustee is still in the preliminary stages of his investigation, this court is granting the requested relief for a period of 90 days to allow

the Trustee to evaluate these concerns and to determine whether or not he will pursue breach of fiduciary duty claims, as well as other causes of action, against former IFC officers and directors.

## IV. CONCLUSION

For the foregoing reasons Trustee David P. Leibowitz's Motion for Preliminary Injunction is granted.

First Chicago, CoActiv, and M & T, along with any other plaintiffs, are hereby enjoined from any further prosecution of or further action in *First Chicago Bank and Trust v. Rudolph Trebels, et al.,* case no. 09 CH 30153 (Cir. Ct., Cook County, Ill.), *Manufacturers and Traders Trust Company, Successor By Merger to Court Square Leasing v. Trebels,* case no. 09–4192 (E.D.Pa.), and *CoActiv Capital Partners, Inc. v. IFC Credit Corp., et al.,* 09–CV–06116 (N.D.Ill.) until the earlier of April 27, 2010 or the Trustee's determination that no suit relating to the Defendants' claims will be filed.

Greenwich Insurance Company is not enjoined from advancing or otherwise distributing D & O policy proceeds for the legal expenses of the Debtor's former officers and directors. However, Greenwich is hereby ordered to inform the Trustee of all payments of legal expenses on behalf of the Debtor's former officers and directors.