**In re PASQUINELLI HOMEBUILDING, LLC,**

**In re Pasquinelli Financial, LLC,**

**In re Pasquinelli Management, LLC,**

**In re Pasquinelli Homes, LLC,**

**In re Portrait Homes Indiana, LLC,**

**In re Portrait Homes North Carolina, LLC,**

**In re Portrait Homes Texas, LLC, Debtors.**

**Nos. 11–14829, 11–25203, 11–25205, 11–25207, 11–25210, 11–25211, 11–25213.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Jan. 17, 2012.

Brian L. Shaw, John W. Guzzardo, Shaw, Gussis, Fishman, Glantz, Wolfson & Tow, Chicago, IL, for Debtors.

## ORDER GRANTING MOTION TO MODIFY AUTOMATIC STAY
### (Dkt. No. 183)

JACQUELINE P. COX, Bankruptcy Judge.

This matter is before the Court on the Motion of Bruno A. Pasquinelli, Anthony R. Pasquinelli, Bruno H. Pasquinelli, Christine Pasquinelli and Maria Pasquinelli (the "Pasquinelli Insureds") to Modify the Automatic Stay as Necessary to Allow Access to Insurance Proceeds of the D & O Insurance Policy (Bankruptcy Case No. 11–14829, Dkt. No. 183–1) issued by Illinois National (the "Motion"). For the reasons that follow the Motion is Granted.

## BACKGROUND

On April 7, 2011, Pasquinelli Homebuilding, LLC ("Pasquinelli" or "the Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On June 15, 2011 Pasquinelli Financial, LLC; Pasquinelli Management, LLC; Pasquinelli Homes, LLC; Portrait Homes Indiana, LLC; Portrait Homes North Carolina, LLC; and Portrait Homes Texas, LLC each filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code (collectively, the "Debtors"). On July 12, 2011, the Court entered an order allowing the Joint Administration of the Debtors' cases.

The Directors, Officers and Private Company Liability Insurance Policy ("D & O Policy") that is the subject of this Motion, was issued by Illinois National Insurance Company ("Illinois National") to Pasquinelli and provides coverage to its Directors and Officers, initially covering the period March 29, 2009 to March 29, 2010. The D & O Policy was later endorsed to provide the same coverage through and until March 29, 2016. The D & O Policy has an aggregate Limit of Liability of $10,000,000. See D & O Policy, Item 4.

The D & O Policy contains two insurance clauses, Coverage A and Coverage B. The Side A Coverage for Individual Insureds provides that:

This policy shall pay the loss of each and every Director, Officer or Employee of the Company arising from a Claim first made against such Insureds during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities as Directors, Officers or Employees of the Company except when and to the extent that the Company has indemnified such Insureds. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

D & O Policy, § 1

The Side B Coverage for Private Company Insurance provides that:

This policy shall pay the Loss of the Company arising from a:

(i) Claim first made against the Company, or

(ii) Claim first made against an Individual Insured,

during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act, but, in the case at (ii) above, only when and to the extent that the Company has indemnified the Individual Insured for such Loss pursuant to law, common or statutory, or contract,

or the Charter or By-laws of the Company duly effective under such law which determines and defines such rights of indemnity. The insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

D & O Policy § 1

The Order of Payments provides as follows:

6. The Policy is amended to include the following Clause at the end of the policy:

CA–1. ORDER OF PAYMENTS

In the event of Loss arising from any Claim(s) for which payment is due under the provisions of this policy but which Loss, in the aggregate exceeds the remaining available Limit of Liability of this policy, then this policy shall:

(a) first pay such Loss for which coverage is provided under Coverage A of the policy, then with respect to whatever remaining amount of the Limit of Liability is available after payment of such Loss,

(b) then pay such Loss for which coverage is provided by Coverage B of the policy.

In the event of Loss arising from a Claim(s) for which payment is due under the provisions of this policy (including those circumstances described above in this Clause), the insurer shall at the written request of the Named Entity:

(a) first pay such Loss for which coverage is provided under Coverage A of the policy, then

(b) either pay or hold payment for such Loss for which coverage is provided by Coverage B of the policy.

. . . .

D & O Policy, Endorsement No. 9, ¶ 6.

Pre-petition, Harris N.A. ("Harris"), one of Pasquinelli's lenders, filed a complaint against the Pasquinelli Insureds in state court alleging, inter alia, breach of fiduciary duty. The complaint was dismissed with leave to replead. The Pasquinelli Insureds represent that other banks have threatened to file similar suits. The Trustee for the Debtor has also stated that he anticipates bringing similar claims in these bankruptcies. Harris failed to replead after two extensions, and no other bank filed claims. The Trustee has not yet filed any claims against the Pasquinelli Insureds in this proceeding.

Illinois National advanced defense costs of the Pasquinelli Insureds and desires to continue paying such defense costs that are already or will become owing to the Pasquinelli Insureds under the D & O Policy. At the request of Illinois National, the Pasquinelli Insureds filed the instant Motion seeking the entry of an order either confirming that the proceeds of the D & O Policy are not property of the Estate and therefore not subject to the automatic stay, or modifying the automatic stay to allow Illinois National to continue to pay the proceeds.

Bank of America, N.A. ("Bank of America"), a creditor herein, objects to the Motion on the grounds that any defense costs paid would reduce the amount available to pay claims of creditors of the Debtor. Similarly, the Trustee argues that the Policy is property of the Estate, and allowing the Pasquinelli Insureds to draw on the available limit will deplete funds the Trustee may need to defend the Estate against claims brought as a result of the Pasquinelli Insureds' alleged malfeasance.

### The Directors and Officers Insurance Policy is Property of the Bankruptcy Estate

Pursuant to 11 U.S.C. § 541(a)(1), property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 362(a)(3) protects such property from "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

■ Courts have generally held that a debtor's insurance policy is within the ambit of the Bankruptcy Code's broad definition of property of the estate and therefore subject to the automatic stay. *See, e.g., Allied Digital Technologies, Corp.,* 306 B.R. 505, 509 (Bankr.D.Del.2004). However, courts disagree on whether the proceeds of liability insurance policies are property of the estate. The various court decisions turn on the "language and scope of the policy at issue." *Allied,* 306 B.R. at 509. "The outcome usually hinges on who is the named insured under the liability insurance policy because liability policies are held by insureds against claims that may be asserted against them." *Id.* at 509–10.

■ In cases where the liability insurance policy provides direct coverage to directors and officers, "the proceeds of the insurance policy are not property of the bankruptcy estate because the proceeds are payable to the directors and officers not the estate." *Id.* at 510. When the liability insurance policy provides direct coverage to a debtor the proceeds of the policy are property of the bankruptcy estate. *Id.* at 511. The debtor is therefore "entitled to payment of the proceeds and those proceeds should be protected as property of the estate." *Id.* However, where the policy provides both direct coverage to the directors and officers, and direct entity coverage, "the general rule is that since the insurance proceeds may be payable to the debtor they are property of the debtor's estate." *Id.* "A debtor's interest in the proceeds requires protection from depletion and overrides the interest of the directors and officers." *Id.* See also, *In re Sacred Heart Hosp. of Norristown,* 182 B.R. 413, 419–20 (Bankr.E.D.Pa. 1995) (The court held that the debtor's interest in insurance proceeds of a directors and officers liability insurance policy was sufficient to bring them into the bankruptcy estate, noting that the policy provided both direct coverage to the debtor in addition to indemnification coverage).

### The D & O Policy

■ Turning to the D & O Policy herein, the language indicates that direct coverage is provided to Pasquinelli in addition to the Individual Insureds. Specifically, the Side B Coverage provides that "[t]his policy shall pay the Loss of the Company arising from a: (i) Claim *first made against the Company,* or (ii) Claim first made against an Individual Insured...." D & O Policy, § 1B. (emphasis added). The Pasquinelli Insureds' characterization of Debtor's interest as merely "contingent or residual" is inconsistent with the plain language of the D & O Policy which reflects separate entity coverage for claims made against the Debtor.

The Pasquinelli Insureds contend, however, that the Order of Payments provision of the D & O Policy "expressly prioritizes the policy proceeds payable to the individual Pasquinelli Insureds over any proceeds payable to the Debtor estate," which in their view means that the estates have no right to insurance proceeds unless and until all claims of the Individual Insureds have been satisfied in full. Motion for Relief From Stay, p. 5. In support of this

argument, the Pasquinelli Insureds rely on *In re Laminate Kingdom, LLC*, No. 07–10279, 2008 WL 1766637 (March 13, 2008), which held that the proceeds of the debtor's insurance policy were not property of the estate. *In re Laminate Kingdom*, at *3. The court arrived at its decision after reviewing the "language and scope of the policy at issue." *Id.* at *4 (quoting *Allied Digital*, 306 B.R. at 509). Notably, however, the insurance policy at issue in that case "specifically require[d] that the proceeds be used *first* to pay non-indemnifiable loss for which coverage is provided under Coverage A of [the] policy ... Then, only after such payments are made, and only if proceeds remain after payment of such Costs of Defense, will the Trustee or the estate be paid any proceeds." *Id.* at *3. The D & O Policy at issue herein, however, contains no such explicit language affording priority. Rather, the Order of Payment provision provides that in the event of a Loss from any claim covered under the Policy where the loss in the aggregate exceeds the remaining available Limit of Liability of this policy, the Insurer must first pay for coverage provided under Coverage A of the Policy, which in this case, would be for the Pasquinelli Insureds. *See* D & O Policy, Endorsement 9, ¶ 6(a). Any remaining amount of the Limit of Liability available after the payment of a loss respecting the Directors and Officers, the Insurer would pay for any Loss for which coverage is provided by Coverage B of the D & O Policy, the source of the Debtor's coverage. *Id.* at ¶ 6(b). In the Court's view, this provision only gives such priority treatment to Coverage A Insureds when there is not enough money to pay all claims. The Pasquinelli Insureds have not argued that this is the case here.

The Pasquinelli Insureds' reliance on *Allied Digital* is also misguided. Although the insurance policy in that case also provided direct coverage to the debtor, the court specifically opined that because the Debtor was no longer covered by the D & O Policy, it necessarily followed that the policy proceeds were no longer property of the estate. *Allied*, 306 B.R. at 511 Again, those circumstances are not present here, as the D & O Policy provides coverage through March 29, 2016.

Accordingly, the Court finds that the Debtor's interest is sufficient to bring the D & O Policy proceeds into the Estate. *In re Sacred Heart*, 182 B.R. at 419–20. As such, the Trustee, (as successor to the Company upon the filing of the bankruptcies) as well as the Directors, Officers and Employees of the Company are entitled to payments under the Policy. 11 U.S.C. § 541(a)(1).

**Cause Exists to Modify the Automatic Stay**

 The Pasquinelli Insureds next argue that in any event, cause exists under section 362(d)(1) to modify the automatic stay to allow Illinois National to continue payment of defense costs. In determining whether to grant relief from the automatic stay, courts generally examine (i) whether any "great prejudice" to either the bankrupt estate or the debtor will result from lifting the stay, as well as (ii) whether the hardship to the non-bankruptcy party by maintenance of the stay considerably outweighs the hardship to the debtor. *IBM v. Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir.1991). The decision to modify the automatic stay is within the broad discretion of the court. *In re Laminate Kingdom*, at *3. In the context of liability insurance proceeds, courts commonly grant such relief to allow payment of defense costs "especially when there is no evidence that direct coverage of the debtor will be necessary." *Allied*, 306 B.R. 505, 513. In this case, the Court

finds that cause exists to modify the automatic stay.

The Pasquinelli Insureds assert that allowing Illinois National to continue funding their defenses costs would be in the best interests of the Estate as it eliminates potential indemnification claims against them. They also argue that they would suffer significant hardship if they are deprived of the insurers' acknowledged agreement to fund defense costs.

The Trustee counters that payment of the Pasquinelli Insureds' attorneys' fees would deplete the Estate's property by diminishing the limits of the policy proceeds. The Trustee notes that the Policy's Limit of Liability is $10 million in the aggregate for all claims made under it. Clause 8 of the Policy obligates the Insurer to defend Claims until the Limits of Liability have been exhausted or an insured rejects a settlement. Once that amount has been exhausted, the insurer has no further obligation to the Insureds. The Trustee is concerned that the payment of the Pasquinelli Insureds' attorneys fees could deplete the Estate's property by diminishing the limits of the policy proceeds that might otherwise have been available to the Estate to satisfy settlements or judgments that are rendered against it or are obtained against the Pasquinelli Insureds for which it is responsible.

Relying in part on this Court's prior ruling in *In re IFC Credit Corp. v. First Chicago Bank & Trust, et al.*, 422 B.R. 659 (Bankr.N.D.Ill.2010), the Trustee posits that the payment of the proceeds would erode the Estate's insurance asset through a reduction in the amount of coverage otherwise available to the Trustee. On the other hand, the Trustee asserts that there is no hardship to the Pasquinelli Insureds at present because there is no pending third party litigation against them, where-

as the Trustee is in the process of retaining special counsel to determine whether claims exist against the Pasquinelli Insureds. The Court's decision in *IFC Credit Corp.* is distinguishable from the circumstances herein. There, the Chapter 7 trustee testified that there was substantial overlap between the conduct that the Trustee was investigating and the conduct that formed the basis of creditors' claims against the defendants. The Court also noted the following:

> Given the number and scope of the lawsuits pending and the amount at issue in each suit, it is unlikely that IFC's $5,000,000 D & O policy will provide enough funds to satisfy [the defendants'] legal expenses, judgments in the three lawsuits, and a judgment in favor of the Trustee on behalf of the wider creditor class of approximately 13,000 creditors.

*IFC Credit Corp.*, 422 B.R. at 663.

Here, however, the Trustee concedes that no claims have been filed against the Estate by third party creditors and the Trustee has not initiated any litigation against the Pasquinelli Insureds. There is no competing pending litigation to contend with. While the Court is sympathetic to the Trustee's concerns regarding the erosion of the insurance proceeds, the Court is not inclined to prohibit Illinois National from exercising its contractual rights to pay defense costs. The Court is not convinced that any prejudice will inure to the Estate at this time if the Pasquinelli Insureds are allowed to seek coverage of their defense costs.

## CONCLUSION

For the foregoing reasons, the Motion to Lift the Automatic Stay is Granted. The Objection of Bank of America is overruled. Illinois National is permitted to continue

its payment of the Pasquinelli Insureds' Defense Costs.